## Ammlung, Admx. v. City of Chester et al.

*Marvin I. Lessin,* for plaintiff.

*Arthur Levy,* for defendants.

deFURIA, J., August 16, 1971.—As a result of the death of Russell G. Ammlung, Jr., plaintiff filed two suits. Her first suit named a magistrate, various police officers and an employe of the police department of the City of Chester as defendants. Her second suit named the City of Chester, the mayor and the chief of police as defendants.

The preliminary objections in the nature of a demurrer of defendants in each suit are before us for consideration.

The first suit specifically alleged that:

Officer Platt arrested decedent on January 24, 1970, at about 11 p.m.;

Officers Platt, Friel and Brown brought decedent to the Chester Police Station;

These police officers and others "concluded" decedent was so drunk that he should be placed in a cell to sober up and to be arraigned;

Captain Welc was in charge of the police station and carelessly supervised its operation;

Decedent was left in the care of Roy Dixon, employe of the police department.

Magistrate Lawrence and Sergeant Morgan visited decedent the next morning about 8:45 a.m. for purposes of arraignment, were unable to arouse him and left.

About 10 a.m., January 25, 1970, Ammlung was discovered unconscious and died shortly thereafter.

Decedent was left in the cell unattended and without medical attention or examination.

Anyone and everyone who had any contact with decedent or who had supervision of the jail premises was made a defendant. Plaintiff's scattergun approach continued with her specific allegations of negligence:

That defendants, at large, failed to exercise reasonable care to protect persons arrested and confined to the city jail; failed to render proper examination of an intoxicated person charged with being drunk and disorderly to ascertain if such person is actually intoxicated. (The last allegation is self-contradictory.)

That defendants failed to notify the parents of a minor of his arrest. (This is the first intimation in the complaint that decedent was a minor. At the argument, counsel for plaintiff informed the court that Ammlung was 18 years of age.)

That defendants failed to check, observe and diagnose the condition of the minor, and failed to summon a doctor to observe and diagnose his condition.

That defendants failed to maintain the premises properly and splashed or washed water down the minor to awaken him, thereby causing him to contact (sic) pneumonia.

That defendants failed to take proper precautions and to exercise proper care so as to prevent the death of the minor.

That defendants violated local ordinances and statutes of the Commonwealth pertaining to procedures to be taken upon the arrest and confinement to jail of a minor under the influence of alcohol or drugs.

The second suit names the City of Chester, the mayor and the chief of police defendants, under the same allegations aforesaid. Again, simple negligence is charged, committed in the course of official duties.

In neither plaintiff's brief nor argument was any claim or citation made to maintain the liability of the city. The rule in Pennsylvania is clear that the Commonwealth, its instrumentalities and political subdivisions, are not liable in trespass for the actions of their officers and employes in the performance of their official duties: Smeltz v. Harrisburg, 440 Pa. 224 (1970); Laughner v. Allegheny County, 436 Pa. 572 (1970); Montgomery v. Philadelphia, 392 Pa. 178 (1958). By reason of such immunity, a cause of action has not been stated against the city.

No act or order of the mayor or chief of police is alleged to have contributed to the death of plaintiff's decedent. Their alleged liability rests solely upon their office. Vicarious liability, unless directly imposed by statute, rests upon a master-servant, employer-employe or principal-agent relationship. None of defendants whose alleged action or nonaction led to decedent's death fits into an agent or employe relationship.

The magistrate, in fact, is an elected official. The police officers and Dixon are employes of the City of

Chester, and not of the mayor or of the chief: 53 PS §37001 (Third Class City Code).

The posts of mayor and chief of police fall into the class of "high public officials." The nature of their duties and the importance of their offices are obvious, and each makes policy. As reannounced in Jonnet v. Bodick, 431 Pa. 59, 244 A.2d 751 (1968), this class of official is protected by "absolute privilege" and, therefore, is immune from liability for ordinary negligence: Montgomery v. Philadelphia, supra; Matson v. Margiotti, 371 Pa. 188 (1952).

This principle has early roots. Municipal officials are not personally liable for acts done in the exercise of discretion given them by law. "Such a measure of immunity to public officers the interests of society and the enforcement of the laws demand": Yealy v. Fink, 43 Pa. 212 (1862). Such officials are liable only for malicious, wanton or intentional acts beyond the scope of their authority and discretion. Therefore, a cause of action has not been pleaded as to the mayor and the chief of police.

As to Magistrate Lawrence, plaintiff conceded, at argument, that no basis to hold this defendant existed.

As to the liability of police officers for injurious acts committed in the performance of their duties, the law is not clear.

In Meads v. Rutter, 122 Pa. Superior Ct. 64 (1936), an employe of the Commonwealth was held liable for his individual tort. However, although not mentioned by the court, the employe was operating a motor vehicle and The Vehicle Code would impose liability for ordinary negligence.

Municipal employes are liable for their individual acts of negligence while operating a motor vehicle. See Roadman v. Bellone, 379 Pa. 483 (1954). However, a statute specifically provides for the liability of the employe and the municipality where a motor

vehicle's operation is involved: The Vehicle Code of May 1, 1929, P.L. 905, art. VI, sec. 619, 75 PS §212, now the Act of April 29, 1959, P.L. 58, sec. 623, 75 PS §623.

In Thomas v. Osborn, 39 D. & C. 2d 472 (1965), the Chester County court held that failure of a police officer to protect property did not impose liability unless malicious, wanton or intentional conduct was alleged, citing Yealy v. Fink, supra, Burton v. Fulton, 49 Pa. 151, and Highway Paving Co. v. Hausman, 171 F. Supp. 768 (E. Dist.).

A complaint of gross negligence and wanton disregard of the safety of plaintiffs at a summer camp was held insufficient to hold members of the Philadelphia Anti-Poverty Commission liable, in the absence of an allegation of malice: Waters v. Evans, 47 D. & C. 2d 419 (1969).

Plaintiff offers State ex rel. Morris v. National Surety Co., 39 S. W. 2d 581 (Tenn., 1931) as authority. There, decedent was placed in jail, *after a motor vehicle accident*, to sober up. He was not under arrest. He died the next morning from injuries sustained in the accident. The Tennessee court had many reasons for its rule, all inapposite to the instant case.

Finally, plaintiff claims that Geiger v. Madden, 58 Pa. Superior Ct. 616 (1915), stands for the proposition that a police officer is personally liable for his negligence causing injury or death. But, in Geiger, the policeman was off duty and in civilian clothes. He arrested a young man, who broke and ran. Defendant shot and killed the lad. The claim of willful and malicious conduct, at trial, was amended to aver ordinary negligence.

However, the court's ruling was based upon the lack of evidence to show that the boy had committed a felony or that defendant had reasonable cause so to believe. There are several distinguishing features to

the Geiger case. First, defendant was not in uniform nor acting in the usual course of his duties. Second, his act was intentional and designed to harm. Third, absent reasonable belief that a felony had been committed, neither a citizen nor a police officer had the right to use such extreme force.

Plaintiff also avers that various statutes of the Commonwealth and local laws were violated but no specific reference to such laws is made.

While decedent was a minor, since he was 18 years of age, his minority in no way affected arrest, detention or preliminary arraignment procedures. (Plaintiff does not even allege that any of defendants knew that Ammlung was a minor.)

The Juvenile Court Law applies only to persons under the age of 18, 11 PS §243(2), and, even for juveniles, the criminal procedure of arrest and arraignment does not differ from that of an adult until the commitment stage: 11 PS §246.

We are cognizant of the salutary need for a public policy protecting public servants from personal liability for ordinary acts of negligence. Without this measure of protection, society would suffer because of the fear of public servants to act. We are also cognizant of the possible abuse of privileged actions, especially in the field of law enforcement.

However, in balance, the need of governmental operation without the fear and deterrence of personal liability is greater than redress for simple negligence. Furthermore, once a public servant goes beyond the sphere of his official duties and acts maliciously, wantonly or intentionally, he is liable for his individual tort.

The factual allegations of plaintiff hardly sustain any claim of even ordinary negligence against any of defendants.

No allegation of illegal arrest is made against Of-

ficer Platt. Officers Friel and Brown merely helped Platt take decedent to the jail. Captain Welc was in charge of the police station and his "careless supervision" is not otherwise alleged. Decedent was in "the care" of Roy Dixon. Sergeant Morgan, the following morning, accompanied the magistrate to the cell. Defendants failed "to diagnose" decedent's condition. Not only are the actions nebulous, no defendant is made aware of the specific charge of negligence against him. These general allegations are insufficient to form a basis of negligence, since plaintiff fails to plead what each of defendants did or omitted to do: Sprout v. Veterans Home Club, 2 Centre 19 (1961); McGeehan v. Ciccone, 48 Luzerne 127 (1958); Kauffman Hotel & Restaurant Co. v. Thomas, 411 Pa. 87 (1963).

The allegations do not even attempt to maintain any claim of malicious, wanton or intentional misconduct and, therefore, are insufficient in law.

Wherefore, we enter the following

### ORDER

And now, August 16, 1971, the preliminary objections of defendants are sustained, and plaintiff is allowed 20 days from this date to file an amended complaint in accordance with this opinion.