506 F.2d 331
 UNITED STATES of America ex rel. James Hoey FEAR, Appellee,
v.
Alfred T. RUNDLE, Superintendent, Edwin Anderson, Physician,
Raymond Place, Physician, and Commonwealth of
Pennsylvania, Appellants.
 No. 73-2052.
 United States Court of Appeals, Third Circuit.
 Argued Sept. 5, 1974.
Decided Dec. 26, 1974.
 
 Gerald Jay Pomerantz, Glickstein, Pomerantz & Briskin, Philadelphia, Pa., for appellee.
 Israel Packel, Atty. Gen., Lawrence Barth, Asst. Atty. Gen., Michael Minkin, Asst. Atty. Gen., Chief, Civil Litigation, Eastern Region Office, Michael von Moschzisker, Deputy Atty. Gen., Eastern Regional Director, for appellants.
 Appeal from the United States District Court for the Eastern District of Pennsylvania (D.C. Civil Action No. 69-78).
 Before SEITZ, Chief Judge, and GIBBONS and GARTH, Circuit Judges.
 OPINION OF THE COURT
 SEITZ, Chief Judge.
 
 
 1
 This is an appeal from a lower court monetary judgment in favor of the plaintiff in a diversity action based on negligence. The action was initiated by a pro-se complaint of a former inmate in a prison operated by the Commonwealth of Pennsylvania. The plaintiff sued the superintendent of the prison in which he was confined and two physicians associated with the prison who had treated him for an injury sustained during his imprisonment. The plaintiff alleged that the medical treatment which he received with respect to his injury was negligent and that all three defendants were responsible for this negligent care. The lower court, which heard the case without a jury, found that the defendant physicians had been negligent and were liable to the plaintiff since they were not protected by sovereign immunity. The court, however, held that the defendant superintendent, by virtue of his office and duties, was immune from suit. The defendant physicians have appealed, alleging that they, as public officers, are also immune from suit.
 
 
 2
 Since we are of the opinion that the evidence supports the lower court's finding of negligence on the part of the physicians, the essential issue on this appeal is whether they are shielded from plaintiff's suit because they are officers of the Commonwealth of Pennsylvania.
 
 Factual Background
 
 3
 The cause of action in this case arose out of a series of events commencing around 2:00 p.m. on January 24, 1968, at Graterford prison in Montgomery County, Pennsylvania, the correctional facility in which plaintiff was confined. At that time the plaintiff, who was unloading a truck, slipped on a piece of ice in the truck bed and fell, injuring his right wrist as he attempted to break his fall. Shortly thereafter, the plaintiff reported to the prison infirmary where he was examined by the defendant Dr. Anderson, who was the prison's full-time physician. At that time, Dr. Anderson diagnosed the wrist injury as a sprain.
 
 
 4
 The following day, the plaintiff was examined by the defendant, Dr. Place, who worked for the prison on a part time basis. After the examination by Dr. Place, the plaintiff's wrist was x-rayed. Almost a week later, on January 30, 1968, the x-ray report was made revealing that the navicular bone in the plaintiff's right wrist had been fractured. Despite the medical standard prevalent in Montgomery County in 1968, which the district court found to require that a patient with a broken bone be instructed to keep the injured area immobilized and that consultation with an orthopedic specialist be provided as soon as possible, the defendant physicians failed to inform plaintiff that his wrist was broken. They also chose to comply with a prison administrative rule then in effect which required there to be fifteen inmates in need of consultation with an orthopedic specialist-- regardless of the time any number less than fifteen had to wait-- before such a specialist could be brought into the prison.
 
 
 5
 Because of the negligence of the defendant physicians, the plaintiff was not even placed on the 'list of fifteen' until February 8, 1968, a full two weeks after the navicular bone in his right wrist was fractured. As a result of the defendants' negligent decision to follow an administrative rule which directly contravened the standards for practice of their profession, the plaintiff did not actually see an orthopedic specialist until April 11, 1968, two and one half months after his injury.
 
 
 6
 On April 11, the orthopedic specialist placed a cast around the plaintiff's wrist. From that time until some time in August of the same year, the plaintiff wore a cast on his wrist. Throughout the entire period, the plaintiff continued to work as a mechanic since defendants did not execute a medical work release in his behalf. Moreover, the defendants did not recommend to the warden that the plaintiff should be relieved of his duties, despite a Pennsylvania statute in effect at that time which required:
 
 
 7
 . . . The (prison) physician shall inquire into the mental as well as the bodily state of every prisoner, and when he shall have reason to believe that the mind or body is materially affected by the discipline, treatment, or diet, he shall inform the warden thereof, and shall enter his observation on the journal hereinafter directed to be kept, which shall be an authority for the warden for altering the discipline, treatment or diet of any prisoner, until the next meeting of the inspectors, who shall inquire into the case and make orders accordingly. Pa.Stat.Ann., tit. 61, 372 (1964).
 
 
 8
 In August, when the cast was removed from his wrist, the plaintiff was informed that the two segments of the navicular bone had failed to knit. The lower court concluded that the failure to heal could be attributed to the defendants' negligence in (1) failing to see to it that the plaintiff's wrist was immobilized at an early stage, (2) failing to immediately arrange consultation between plaintiff and an orthopedic specialist, (3) failing to execute a medical release in behalf of the plaintiff so that he would not be required to perform his duties as a mechanic, and (4) failing to comply with Section 372 of Title 61, Pa.Stat.Ann. (hereinafter 'Section 372'). The lower court found that as a result of the defendants' negligence, the plaintiff had suffered a substantial impairment of the use of his right hand.
 
 
 9
 The defendants contend that this is in reality a suit against the Commonwealth and is accordingly controlled by early cases which hold that the Commonwealth and its agents are shielded from suit under the doctrine of sovereign immunity.[1] In advancing this contention, the defendants argue that this case falls within the rule enunciated in Biello v. Liquor Control Board, 454 Pa. 179, 301 A.2d 849 (1973).
 
 
 10
 Biello involved a wrongful death action against the Pennsylvania Liquor Control Board and its individual members. In that case, the Supreme Court of Pennsylvania, having concluded that the individual defendants were 'nominal parties to the record' and that the suit was, in effect, a suit against an agency of the Commonwealth, held that the Board was immune from suit since it was performing a governmental function. See also Brown v. Commonwealth, 453 Pa. 566, 305 A.2d 868 (1973).
 
 
 11
 We do not believe, as the defendants contend, that the individual defendants in this case, like those in Biello, are merely 'nominal parties to the record' and that the present action is in reality a suit against the Commonwealth. We think that Biello can be distinguished from the case at bar because in Biello, none of the persons sued were individually the perpetrators of the acts that allegedly were the direct cause of the personal injuries which were the gravamen of the suit in that case. The plaintiff in Biello alleged that the Commonwealth, the liquor control board, its individual members, and the manager of a retail store were liable for the sale of liquor to a minor who subsequently became intoxicated and, allegedly because of his intoxicated state, plunged from a fire escape to his death.
 
 
 12
 In Biello the defendants were not actors; they were sued because of their official responsibilities with respect to the retail sale of liquor on the theory that they should be held vicariously liable. Here, however, plaintiff sues two actors, whose decision to act in one way and whose failure to act in another were found by the lower court to be the proximate cause of plaintiff's injuries. We therefore believe that the instant case is governed by Pennsylvania decisions dealing with suits against public officials as individuals.
 
 
 13
 Montgomery v. Philadelphia, 392 Pa. 178, 140 A.2d 100 (1958), relied upon by the district court in reaching its decision in the case at bar, is one of the most significant Pennsylvania cases dealing with suits against public officials as individuals. Montgomery involved a damage action grounded in slander that was brought by a contractor, who had undertaken to build two buildings for the City of Philadelphia, against two city officials. The defendants claimed they were immune from suit.
 
 
 14
 In responding to this defense, the Supreme Court of Pennsylvania noted that there are two forms of official privilege commonly recognized in this country. Under both, conduct otherwise actionable escapes liability because it is in furtherance of some socially important interest. The first form is qualified immunity. It shields a public official who acts in the performance of his official duties so long as the plaintiff cannot prove that the official has abused the privilege by acting in an improper manner, or did not have reasonable justification for his actions.
 
 
 15
 The second form is absolute immunity. It shields an official absolutely, that is to say, without regard for whether he had reasonable justification for his actions, so long as he acted in the course of his official duties.
 
 
 16
 The Montgomery court noted that not evert official was protected by absolute immunity. The Court stated:
 
 
 17
 Whether a particular public officer is protected by absolute privilege should depend upon the nature of his duties, the importance of his office, and particularly whether or not he has policymaking functions. Id. at 105.
 
 
 18
 However, the Court found that both city officials involved in the case before it were entitled to absolute immunity.
 
 
 19
 Although Montgomery was a defamation case, a subsequent opinion of the Pennsylvania Supreme Court, Jonnet v. Bodick, 431 Pa. 59, 244 A.2d 751 (1968), specifically stated that the Montgomery rule was not to be limited to defamation cases. Moreover, despite the municipal context of the suit in Montgomery, we think the doctrine enunciated in that case was intended to apply to public officers generally. Thus, the Montgomery dichotomy of high and low officials is potentially applicable to the instant case. Montgomery, however, because it was concerned with the immunity of high officials, never indicated the nature and extent of the 'qualified' immunity which is extended to low officials. A recent decision of the Superior Court of Pennsylvania, Ammlung v. City of Chester, 224 Pa.Super. 47, 302 A.2d 491 (1973), suggests that the qualified immunity to which lower officials are entitled affords them protection with respect to any exercise of discretion which is not reckless, wanton or malicious.[2] Indeed, this is exactly the limitation imposed by an early decision of the Pennsylvania Supreme Court, Yealy v. Fink, 43 Pa. 212 (1862), on the immunity held by certain public officials involved in that case.[3]
 
 
 20
 No case has come to our attention that applies the Montgomery rule as expanded by Ammlung to a damage suit against a low official in the performance of a non-discretionary duty.[4] However, we believe that the instant case presents such a fact situation.
 
 
 21
 Based on our reading of Yealy, Montgomery and Ammlung, we believe that the rule in Pennsylvania is that persons are deemed low officials if they do not have extensive responsibility to fashion public policies, and if their duties and office are, when judged in the broad context of the state government in its entirety, not so consistently of public significance as to warrant the extension to them of an extraordinary and privileged status.
 
 
 22
 Applying this rule of law to the defendant physicians we find that neither defendant had sufficiently broad responsibility to formulate public policy or had a sufficiently significant office or sufficiently important duties, when compared with the office and duties of other state officials such as the deputy commissioner of public property or the city architect in Montgomery, to warrant his classification as a 'high' official.
 
 
 23
 As low officials, the defendants' liability to plaintiff for their tortious action or failure to act is dependent, under Montgomery and Ammlung, upon whether their decision to act or to refrain from acting was left to their discretion by state law. Were defendants performing a discretionary function when they caused plaintiff's injury, they would only be liable to plaintiff, under Pennsylvania law, if their action or failure to act was reckless, malicious or wanton. Were the defendants performing a non-discretionary function, we believe they could be held liable to plaintiff, under Pennsylvania law, if their action or omission was merely negligent.
 
 
 24
 Although in the normal performance of their duties as prison physicians, the defendants may have had certain discretionary functions, they also had a statutory duty, under Section 372, to make inquiries concerning the health of each prisoner, and upon learning of physical infirmity affected by prison treatment, to inform the warden of the condition.
 
 
 25
 This duty was part of a statutory scheme which provided the warden with the opportunity and authority to alter the treatment of a prisoner in order to protect his health.[5] The lower court found that the defendant physicians had failed to comply with this statute. We find that the defendant physicians had a non-discretionary duty to comply with the statute. We conclude that as low officials who failed to perform a non-discretionary act, the defendants are not to be judged by the 'reckless, wanton or malicious' standard, but by the standard of negligence used in malpractice actions generally in Pennsylvania.[6]
 
 
 26
 Inasmuch as the district court found the standard of practice in the Montgomery County area at the time of plaintiff's injury dictated that plaintiff be given a work release and because we are of the opinion that Section 372 provided a statutory mandate with respect to such an alteration of a prisoner's routine, we conclude that the defendants' failure to perform the non-discretionary act required by Section 372 constituted negligence when judged by the standards of defendants' profession. Furthermore, since the district court found that defendants' failure to comply with Section 372 was a substantial factor in causing plaintiff's injury to heal improperly, we conclude that the district court was correct in holding defendants liable to plaintiff.[7] Finding liability on this one ground renders it unnecessary for us to determine whether the defendants here would be liable to the plaintiff, under Pennsylvania law, in the absence of Section 372.
 
 
 27
 The judgment of the district court will be affirmed.
 
 GARTH, Circuit Judge (dissenting):
 
 28
 I respectfully dissent inasmuch as I believe the substantive law of Pennsylvania dictates a conclusion as to defendants' liability contrary to that reached by the majority.
 
 
 29
 Insofar as diversity is the jurisdictional basis in this action, we are required to follow state law. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). Although the doctrine of immunity may be under attack in Pennsylvania and immunity has been withdrawn from governmental units, municipal corporations and quasi-corporations, Ayala v. Philadelphia Board of Public Educ., 453 Pa. 584, 305 A.2d 877 (1973), it nevertheless remains that state's law that employees of Pennsylvania may, under certain circumstances, be immune from liability. Brungard v. Hartman, 12 Pa.Cmwlth. 477, 315 A.2d 913 (1974); Dubree v. Commonwealth of Pennsylvania, 8 Pa.Cmwlth. 567, 303 A.2d 530 (1973); Ammlung v. City of Chester, 224 Pa.Super. 47, 302 A.2d 491 (1973). See Daye v. Commonwealth of Pennsylvania, 483 F.2d 294, 299 (3d Cir. 1973) (applying Pennsylvania law). I believe those circumstances giving rise to immunity are present in this case. Accordingly, I would give effect to the doctrine of conditional immunity for lower level officials or employees of the Commonwealth, even though I would be inclined to hold the defendants liable were I presented with this issue on a de novo basis and was not bound by the prevailing substantive law of Pennsylvania. Where the state courts and the state legislature have declined to revise state law granting conditional immunity, the federal courts may not do so in a case based on federal diversity jurisdiction. Daye, 483 F.2d at 299. Cf. Harris v. Pennsylvania Turnpike Comm'n, 410 F.2d 1332 (3d Cir. 1969).
 
 
 30
 I agree with the majority's characterization of the defendant doctors as lower level state employees. Characterized as such, as I read the governing Pennsylvania cases, the defendants are entitled to conditional immunity if they were acting within the scope of their authority and if their alleged negligent conduct was not intentionally malicious, wanton or reckless. Burton v. Fulton, 49 Pa. 151 (1865); Yealy v. Fink, 43 Pa. 212 (1862); Dubree v. Commonwealth of Pennsylvania, supra. See Daye v. Commonwealth of Pennsylvania, supra (where this Court affirmed the continued application of Pennsylvania's doctrine of immunity for state officials and employees). As the plaintiff has failed to allege or prove that the defendants' conduct was intentionally malicious, wanton or reckless in their medical treatment of him, I believe that this Court is obliged to reverse the district court's determination of liability inasmuch as Pennsylvania law provides that the defendants are still cloaked with conditional immunity.[1] The allegations in this complaint of simple negligence and the failure by the district court to find that the defendants' conduct was intentionally malicious, wanton or reckless are insufficient bases on which the defendants, as employees of the Commonwealth, may be found liable. Brungard v. Hartman, 315 A.2d at 914-915; Dubree v. Commonwealth of Pennsylvania, 303 A.2d at 534.
 
 
 31
 Despite the consistent expressions of the Pennsylvania courts that low-level public employees[2] are to be afforded conditional immunity, the majority, without citation of any Pennsylvania precedent, contends that 'as low officials who failed to perform a non-discretionary act, the defendants are not to be judged by the 'reckless, wanton or malicious' standard, but by the standard of negligence used in malpractice actions generally in Pennsylvania.' (Majority Opinion at 335). The majority's formula of liability includes as an essential ingredient the additional characterization of a 'ministerial-discretionary' distinction. I believe, as does the majority, that this distinction is neither helpful nor controlling in the determination of conditional immunity under Pennsylvania law. (Accord, Majority Opinion at 335 n. 4). Yet, the majority finds it necessary to accept this distinction in order to support its theory of public employee liability. Simple negligence, the majority states, is sufficient to hold these employees liable because the defendants had a non-discretionary duty to comply with an 1829 statute[3] and they failed to perform that non-discretionary act. In essence, the majority is of the view that these defendants were negligent as a matter of law and that because their negligence per se was found by the district court to be a substantial factor in causing plaintiff's injury, the defendants were correctly held to be liable.
 
 
 32
 Even if I were to agree with the majority's theory of liability and non-immunity (and I do not agree for the reasons expressed above), nevertheless I would still reverse the district court's judgment as I find no evidence in the record which supports the liability of the defendants for having violated a statutory duty.
 
 
 33
 The defendants' violation of a statute, constituting negligence per se, cannot support the imposition of liability upon the defendants unless the violation of that statute proximately caused the injury sustained by the plaintiff. Wisniewski v. Chestnut Hill Hospital, 403 Pa. 610, 170 A.2d 595 (1961); Shakley v. Lee, 368 Pa. 476, 84 A.2d 322, 323 (1951). Where the critical facts, including those of causal connection are in dispute, as they are here, 'proximate cause' is to be determined by the fact-finder-- here the district court judge. See W. Prosser, Law of Torts, 52 (3d ed. 1964). Compare Schreffler v. Birdsboro Corp., 490 F.2d 1148 (3d Cir. 1974) (applying Pennsylvania law); Liney v. Chestnut Motors, Inc., 421 Pa. 26, 218 A.2d 336 (1966). Although the trial judge concluded that the violation of the statute was a 'substantial factor' in causing the plaintiff's injury, there is a total absence of any evidence in the record below to support a finding that the statutory violation was a proximate cause of the plaintiff's injury.[4]
 
 
 34
 The pertinent portion of the statute on which the majority relies in affirming the district court's judgment, involves the obligation of the defendant doctors to record their medical observations of the prisoner and to inform the warden if the physician believes the prisoner's health is affected by the prisoner's routine. In the record below there is no evidence of:
 
 
 35
 (a) the relationship, if any, of the medical work release to the statute claimed by the majority to have been violated by the defendants;
 
 
 36
 (b) whether or not entries were made by the defendants in the journal directed to be kept;
 
 
 37
 (c) whether the warden was informed by the defendants-- or if and when he consulted the medical journal;
 
 
 38
 (d) whether the statutory procedures were followed at any time;
 
 
 39
 (e) the relationship of the statutory procedures to the administrative rule requiring 15 inmates to be in need of an orthopedic specialist before such a specialist could be brought into the prison;
 
 
 40
 (f) when or if the next meeting of inspectors (now the Board of Trustees) would take place;
 
 
 41
 (g) the effect upon the prisoner's injury of defendants' alleged failure to comply with the statute (apart from the failure to execute a medical work release).
 
 
 42
 In short, there is no competent evidence in the record to supply the necessary causal nexus between the purported violation of 61 P.S. 372 and the injury suffered by the plaintiff.
 
 
 43
 Further, the only evidence in the record pertaining to an action of a prison physician which would directly affect the prisoner's daily routine (without hospitalizing the prisoner), was the evidence of the doctors' failure to issue a medical release[5] excusing the plaintiff from work. However, as noted, no proof was submitted and the record is silent, as to the relation, if any, between the defendants' failure to execute a medical release, the defendants' obligation under the pertinent portion of the statute involved here, and the proximate cause of the injury suffered by plaintiff.
 
 
 44
 Confronted then, as I am, with an absence of evidence pertaining to the 1829 statute, and being unwilling to accept the premise that a violation of that statute must of necessity constitute the proximate cause of any injury suffered by a prisoner who was improperly treated by prison physicians, I believe that the theory on which the majority affirms defendants' liability is untenable here.
 
 
 45
 Furthermore, I believe that defendants' violation of the statute, (if in fact such a violation occurred), constituting negligence as a matter of law, does not, of and by itself, supply the essential willfulness or wantonness precluding a defense of conditional immunity. E.g., Gulf, M. & O.R. Co. v. Freund, 183 F.2d 1005 (8th Cir. 1950), cert. denied, 340 U.S. 904, 71 S.Ct. 280, 95 L.Ed. 654 (1950) (applying Illinois law). I believe that defendants' violation of the statute involved here, may result in a characterization of their conduct as being negligent with all the effects of common law negligence, but with no greater effects. See W. Prosser, Law of Torts, 35 at 202 (3d ed. 1964). Consequently, their negligence as a matter of law is not of the magnitude required to hold them to be liable as employees of the Commonwealth.
 
 
 46
 Accordingly, I would reverse the judgment of the district court which holds the defendant doctors liable as: (1) the plaintiff has failed in his proofs to surmount the defense of conditional immunity which shields the defendants; and (2) even if the majority is correct in its interpretation of Pennsylvania law, the plaintiff has failed to establish 'ordinary negligence' proofs sufficient to impose liability upon the defendants.
 
 
 
 [1]
 See, e.g., O'Connor v. Pittsburgh, 18 Pa. 187 (1851)
 
 
 [2]
 A decision of the Commonwealth Court of Pennsylvania, Dubree v. Commonwealth, 8 Pa.Cmwlth. 567, 303 A.2d 530 (1973), held: To place liability upon a public official who is not a high public official, therefore, it is merely necessary to show that the officer concerned was not acting within the scope of his authority, and that the conduct complained of was intentional, as well as malicious, wanton or reckless. Id
 
 
 [3]
 43 Pa. at 216. The Superior Court of Pennsylvania in Ammlung, supra, apparently concluded that the county supervisors in Yealy were low officials. 302 A.2d at 495
 
 
 [4]
 Some cases have suggested that duties of a public officer that are nondiscretionary should be deemed 'ministerial.' See Ammlung v. City of Chester, supra; 67 C.J.S. Officers 127 at 422. But courts and commentators alike have expressed discontent with the discretionary-ministerial distinction. See, e.g., Larson v. Domestic & Foreign Corp., 337 U.S. 682, 688, 69 S.Ct. 1457, 93 L.Ed. 1628 (1949); Ove Gustavsson Contracting Co. v. Floete, 299 F.2d 655 (2d Cir. 1962); Jaffe, Suits Against Governments and Officers: Damage Actions, 77 Harv.L.Rev. 209, 218-19 (1968). Although a distinction must, of necessity, be drawn between functions which are discretionary and those which are not, we believe that the labels 'discretionary' and 'ministerial' are too often used in a manner that tends to preclude careful analysis of a public official's legal mandate to determine whether that official has, by law, been given discretion to perform a specific act
 
 
 [5]
 Cases in other jurisdictions have found strong public policies to underly statutory provisions similar to those here. See, e.g., Pisacano v. State, 8 A.D.2d 335, 188 N.Y.S.2d 35 (1959)
 
 
 [6]
 In Pennsylvania the rule is that the doctor is required to: 'exercise only such reasonable skill and diligence as is ordinarily exercised in his profession,' Duckworth v. Bennett, 320 Pa. 47, 181 A. 558, 559 (1935), see also Saltzer v. Reckord, 319 Pa. 208, 179 A. 449, 450 (1935), and to give 'due regard to the advanced state of the profession and to exercise the care and judgment of a reasonable man in the exercise of medical skill and knowledge.' Incollingo v. Ewing, 444 Pa. 263, 299, 282 A.2d 206, 217 (1971)
 
 
 [7]
 We have no trouble, as does the dissent, in finding that defendants' failure to comply with Section 372 proximately caused plaintiff's injury. Although the district court did not use the term 'proximate cause,' it did find that defendants' failure was a substantial factor in causing plaintiff's injury. The Supreme Court of Pennsylvania has held, in a negligence case where the plaintiff claimed to have been injured by the defendant's failure to comply with a statutory duty: 'It is well settled in Pennsylvania that in order to find that defendant proximately caused an injury it must be found that his allegedly wrongful conduct was a substantial factor in bringing about plaintiff's injury even though it need not be the only factor.' Majors v. Brodhead Hotel, 416 Pa. 265, 205 A.2d 873, 877 (1965). We have no difficulty finding that plaintiff, in the instant case, was in the class of people protected by Section 372, toward whom defendants had a statutory duty. We think that the expert testimony contained in the record adequately supports the district court's holding that defendants' neglect of this duty was a substantial factor in causing plaintiff's injury. Compare Dornon v. Johnston, 421 Pa. 58, 218 A.2d 808 (1966)
 
 
 [1]
 Pennsylvania law with regard to the individual liability of employees of the Commonwealth (state highway officials) was set forth in Dubree v. Commonwealth of Pennsylvania, 8 Pa.Cmwlth. at 574-575, 303 A.2d at 534:
 To place liability upon a public official who is not a high public official, therefore, it is merely necessary to show that the officer concerned was not acting within the scope of his authority, and that the conduct complained of was intentional, as well as malicious, wanton or reckless. He may escape liability, however, if he did act within the scope of his authority and if his negligent conduct was not intentionally malicious, wanton or reckless.
 
 
 [2]
 Burton, supra, involved members of a school board who were held conditionally immune from liability for having removed a teacher from her position; Yealy, supra, involved two highway supervisors who were held immune from liability when a bridge they constructed diverted water from a downstream mill; Brungard, supra, involved a college professor who was held immune from liability for an explosion in a laboratory classroom; Dubree, supra, involved the following state highway employees, all of whom were held to be conditionally immune from liability in a wrongful death action based on allegations that the defendants had removed a bridge and had not given warnings of the excavation: a District Engineer; an Assistant District Engineer; a Superintendent of the Maintenance Department; an Assistant Superintendent of the Maintenance Department; and two Foremen
 
 
 [3]
 61 P.S. 372 in pertinent part provides:
 . . . The (prison) physician shall inquire into the mental as well as the bodily state of every prisoner, and when he shall have reason to believe that the mind or body is materially affected by the discipline, treatment, or diet, he shall inform the warden thereof, and shall enter his observation on the journal hereinafter directed to be kept, which shall be an authority for the warden for altering the discipline, treatment or diet of any prisoner, until the next meeting of the inspectors, who shall inquire into the case and make orders accordingly.
 
 
 [4]
 This conclusion is found in Conclusions of Law 10 through 12 of the district court's opinion. Although denominated a Conclusion of Law, a finding of proximate cause in the instant context is properly a finding of fact. See Kridler v. Ford Motor Co., 422 F.2d 1182, 1185 (3d Cir. 1970) (applying Pennsylvania law); Anderson v. Bushong, 404 Pa. 382, 391, 171 A.2d 771, 775 (1961). Findings of fact are not to be set aside unless clearly erroneous, F.R.Civ.P. 52(a), Krasnov v. Dinan, 465 F.2d 1298 (3d Cir. 1972), and thus cannot stand in the absence of an evidential basis. Thornton v. United States, 493 F.2d 164, 167 (3d Cir. 1974)
 
 
 [5]
 The district court treated the failure of the defendants to execute a medical release separately from the failure of the defendants to comply with 61 P.S. 372. In Conclusion of Law 9, the district court held that the failure of the physicians to execute a medical release breached a duty owed to the plaintiff and that the negligence resulting therefrom was a substantial factor in causing the plaintiff's fracture to heal improperly. In any event, as I read the majority opinion, it does not rely upon the failure of the defendants to issue a medical release as a basis for affirming liability