James A. SEYBOLD, Jr., Executor of the Estate of James A. Seybold

v.

Anton GUNTHER and Eastern Overall Cleaning Co.

v.

John E. MURPHY and Bernard Lesko.

Civ. A. No. 72–1791.

United States District Court, E. D. Pennsylvania.

April 22, 1975.

Gerald L. Bowen, Willow Grove, Pa., for plaintiff.

G. Wayne Renneisen, Daniel J. Ryan, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

BECHTLE, District Judge.

James A. Seybold ("decedent") died as a result of injuries sustained in a collision between two motor vehicles on Taylorsville Road in Bucks County, Pennsylvania, on April 26, 1972. The executor of the decedent's estate, James A. Seybold, Jr., ("executor") instituted this diversity action under the Pennsylvania wrongful death and survival acts against Anton Gunther, the driver of the other vehicle and Gunther's employer, Eastern Overall Cleaning Company ("Eastern Overall"). The complaint alleged that the collision which resulted in the death of the decedent was caused by the negligent operation of the employer's motor vehicle by defendant Anton Gunther. Thereafter, the defendants brought a third-party action for contribution against the Pennsylvania Department of Transportation ("PennDOT") and three of its employees [1] alleging that the accident was caused by the negligence and carelessness of the third-party defendants in the maintenance and upkeep of Taylorsville Road, a state highway.[2] Treating the third-party action against PennDOT as essentially an action against the Commonwealth of Pennsylvania, the Court dismissed the third-party complaint against PennDOT on the grounds of sovereign immunity.

Following the completion of discovery and the disposition of various pretrial motions, the case proceeded to trial before a jury of eight. At the conclusion of the evidence, the Court granted the motion of the two remaining third-party defendants for a directed verdict under Fed.R.Civ.P. 50(a), in that the evidence failed to establish that the conduct of Murphy and Lesko was malicious, wanton, or reckless. The jury returned a verdict against the defendants Anton Gunther and Eastern Overall in the amount of $85,565.75. Presently before the Court is the defendants' motion for a new trial as to their third-party complaint against third-party defendants Murphy and Lesko.

The evidence presented during the trial of the matter established the following operative facts: At the time of the accident, decedent was driving his automobile in a southerly direction on Taylorsville Road in Bucks County. Defendant Gunther was driving a truck owned by defendant Eastern Overall and proceeding in the opposite direction on Taylorsville Road. As Gunther approached a small bridge, the left front wheel of the truck struck a relatively large pothole located near the center line on the northbound side of the highway. The truck then veered into the southbound lane and collided head-on with decedent's vehicle.

The evidence showed that Taylorsville Road was in poor condition at the time of the accident, particularly in the general vicinity of the collision. The road in question was dotted with potholes both north and south of the area where the accident occurred.

With respect to the third-party action against Murphy and Lesko, the proof

---

1. The three individual third-party defendants were John Murphy, Bernard Lesko and Jerome Taylor. Pursuant to a stipulation between counsel, Jerome Taylor was dismissed as a party to the litigation.

2. As a result of a ruling of this Court on the motion of the three individual third-party defendants to dismiss the third-party complaint as to them, that complaint has been amended to aver that the death of the plaintiff's decedent resulted from the reckless and wanton misconduct of the two individual third-party defendants.

showed that both individuals were employees of PennDOT. Murphy was employed as the Superintendent of Maintenance for the roads and bridges in Bucks County, which included Taylorsville Road. Third-party defendant Lesko was one of five Assistant Superintendents for Maintenance in Bucks County. He was responsible for an area in Bucks County referred to as Section No. 5, of which Taylorsville Road is a part.[3]

■■ The principal issue raised by defendants' motion for a new trial is the extent to which employees of the Commonwealth of Pennsylvania are immune from liability for negligent acts committed within the scope of their employment. Two different rules of immunity apply to officials and employees of the Commonwealth of Pennsylvania, depending upon the position held by the individual in question and the responsibilities attached to such position. Dubree v. Commonwealth of Pa., 8 Pa.Cmwlth. 567, 303 A.2d 530 (1973). Under Pennsylvania law, "high public officials" are absolutely immune from tort liability stemming from action taken within the scope of their authority. Montgomery v. Philadelphia, 392 Pa. 178, 140 A.2d 100 (1958); Matson v. Margiotti, 371 Pa. 188, 88 A.2d 892 (1952). The question of whether an employee is a "high public official" and, therefore, absolutely immune from liability for actions taken in the course of his official duties depends "upon the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." Montgomery v. Philadelphia, supra, 392 Pa. at 186, 140 A.2d at 105. In addition to the fact that at no time during the course of this litigation did the two third-party defendants assert that they were entitled to absolute immunity, the evidence introduced at trial clearly demonstrated that nei-

ther Murphy nor Lesko was a high public official as defined in the Montgomery and Dubree cases. It is, therefore, unnecessary for this Court to consider the applicability of the doctrine of absolute immunity to the facts of this case.

■ The evidence presented at trial established that Murphy and Lesko are "low public officials" for the purpose of determining the extent to which the two state highway employees are immune from liability. The law of Pennsylvania regarding the immunity of low public officials (a public official who is not a high public official) is not quite so clear as are the rules of immunity relative to the conduct of a high public official. While low public officials are entitled to a qualified or conditional immunity, the legal and factual standards upon which such immunity is based have not been clearly defined. In the Dubree case, the Commonwealth Court of Pennsylvania held that a public official other than a high public official may escape liability for tortious conduct if he acted "within the scope of his authority and if his negligent conduct was not intentionally malicious, wanton or reckless." 8 Pa. Cmwlth. at 571, 303 A.2d at 534. The standard set forth in Dubree was cited with approval by the Third Circuit in Daye v. Commonwealth of Pennsylvania, 483 F.2d 294 (3rd Cir. 1973), a case factually similar to the one at bar. In affirming the District Court's dismissal of a tort action brought against officials of PennDOT, the Third Circuit in the Daye case held that ". . . Pennsylvania state highway officials may escape liability where they acted within the scope of their authority and their alleged negligent conduct was not intentionally malicious, wanton, or reckless." 483 F.2d at 299. Thus, under Dubree, a Commonwealth Court case, and Daye, a Federal decision construing Pennsylvania law, a low public official cannot be held liable

3. The evidence concerning the responsibility of Murphy and Lesko, respectively, for the repair and maintenance of state highways in Bucks County will be further developed in the portion of this Memorandum dealing with the question of the immunity of state highway officials from tort liability.

in tort for merely negligent acts, or omissions, committed within the scope of his authority.

Were the Court to apply the above-stated rules of immunity to the facts of this case, the resolution of the defendants' motion for a new trial would be easily reached. However, a different and more complicated rule of immunity with respect to low public officials has been enunciated in two recent decisions. The case of Ammlung v. City of Chester, 224 Pa.Super. 47, 302 A.2d 491 (1973), involved a suit brought against individual officials in the City of Chester Police Department by the administratrix of the estate of an 18-year-old boy who died in a cell in a Chester police station. The court in *Ammlung* drew a distinction between discretionary and non-discretionary functions of a low public official, holding, in effect, that a low public official is immune from liability for a merely negligent act which is discretionary in nature. Because the complaint sufficiently alleged that the conduct of the defendant police officials was malicious and wanton, the court in *Ammlung* reversed the lower court's dismissal of the complaint.

In support of the motion for a new trial, defendants herein place considerable reliance on United States ex rel. Fear v. Rundle, 506 F.2d 331 (3rd Cir. 1974), an action instituted by a prison inmate against two physicians associated with the prison who had treated him for an injury sustained during his imprisonment. Relying on Ammlung v. City of Chester, *supra*, the court in the above-cited case held that the question of whether the doctors were immune from liability for a negligent act or failure to act depends upon whether their decision to act or not to act was discretionary under pertinent state law. The court

defined the rule of immunity as to low public officials as follows:

". . . Were defendants performing a discretionary function when they caused plaintiff's injury, they would only be liable to plaintiff, under Pennsylvania law, if their action or failure to act was reckless, malicious or wanton. Were the defendants performing a non-discretionary function, we believe they could be held liable to plaintiff, under Pennsylvania law, if their action or omission was merely negligent."

Fear v. Rundle, *supra*.

According to the decision in *Fear*, a low public official is immune from tort liability for a negligent act only if such act involved an exercise of the official's discretion; whereas, under the *Dubree* and *Daye* cases, a lower public official is simply not liable for merely negligent conduct, notwithstanding the discretionary or non-discretionary nature of the act or failure to act. While the Court is somewhat troubled by the failure of the majority in the *Fear* case to distinguish or even mention the court's prior holding in *Daye*, we are constrained to apply the decision and reasoning of *Fear* as the law of Pennsylvania relative to the liability of a public official for tortious action taken within the scope of his employment.[4] Consequently, a new trial should be granted only if a review of the evidence presented during the trial establishes that Murphy and Lesko were performing non-discretionary functions as maintenance superintendents in Bucks County. If the two defendants were performing a discretionary function, the decision in *Fear* would dictate the denial of the motion for a new trial, for the record is completely devoid of any evidence that the conduct of either Murphy or Lesko was

---

4. Obviously, were the Court to apply the rules of immunity set forth in *Daye* and *Dubree*, third-party defendants Murphy and

Lesko would clearly be immune from liability under the facts of this case.

intentionally malicious, wanton, or reckless.

 With respect to the discretionary and non-discretionary dichotomy, Murphy testified that as Superintendent of Maintenance for the roads and bridges in Bucks County he was responsible for the overall planning and scheduling of road maintenance throughout such county. Murphy stated that the principal occupation of the maintenance crews was the repair of potholes in the roads. He further testified that he had approximately 1200 miles of state highway under his jurisdiction but that only a certain amount of money was available to be used for road maintenance. Prior to the accident involving the decedent and defendant Gunther, Murphy had recommended to the District Maintenance Engineer that Taylorsville Road be resurfaced. The above road was in fact resurfaced in 1973.

Third-party defendant Lesko testified that at the time of the accident he was Assistant Superintendent for Maintenance in Bucks County. Lesko was responsible for maintaining the state-owned roads in Section 5, which included Taylorsville Road. According to Lesko's testimony, his major responsibility as Assistant Superintendent was to drive up and down the roads within Section 5 looking for portions of roadway that had to be repaired. When asked what he did when he saw potholes, Lesko responded, "I would record them and then schedule them to be done as soon as I possibly could." (N.T. 2–179). Lesko stated that he had scheduled Taylorsville Road for repairs seven times within the month preceding the accident and had initially recommended that the road be resurfaced.

The uncontroverted testimony of Murphy and Lesko establishes beyond peradventure that the decision to repair a particular highway or to fix a specific pothole was totally within the discretion of the two officials. Murphy was responsible for the maintenance of 1200 miles of road; the roadway under Lesko's control totalled over 250 miles. The total number of road miles for which they were responsible, coupled with the fact that only limited state funds were available for highway maintenance, necessitated the exercise of a considerable amount of discretion on the part of Murphy and Lesko with respect to the planning and scheduling of repairs.

Because the decision to repair or not to repair the area of Taylorsville Road in question here was discretionary, defendants can be liable for the failure to repair the subject pothole only if such failure constituted malicious or wanton conduct. United States ex rel. Fear v. Rundle, *supra*. Since there is no evidence in the record that either Murphy or Lesko intentionally, maliciously, or wantonly failed to repair the pothole over which Anton Gunther's truck drove, third-party plaintiffs' motion for a new trial will be denied.