Meads, Appellant, et ux. *v.* Rutter.

Argued March 11, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

*George Hay Kain,* with him *George Hay Kain, Jr.,* for appellant (No. 5), and for appellee (No. 6).

*Ralph F. Fisher,* for appellant (No. 6), and for appellee (No. 5).

OPINION BY BALDRIGE, J., April 27, 1936:

Arthur M. Meads and Erdine H. Meads, his wife, brought an action of trespass against Mark Rutter on account of property loss and personal injuries sustained in an automobile accident.

To the plaintiffs' statement of claim, defendant filed an affidavit of defense, raising the question of law that he, at the time of the accident, was an employee of the Secretary of Highways of the Commonwealth of Pennsylvania which has immunity from a suit without its consent. The court below decided adversely to the defendant, with leave to file a supplemental affidavit of defense. The case came on for trial, and judgments were obtained by Arthur M. Meads, in the sum of $1,600, and his wife for $1,500. A motion for judgment n. o. v. filed by defendant was sustained as to Arthur M. Meads and refused on the judgment had by Erdine H. Meads. Arthur M. Meads and the defend-

ant both appealed. The appeals were argued at the same time and will be disposed of in one opinion.

On December 10, 1932, about 8:30 p. m., the plaintiffs were travelling southwardly on the road leading from York to Dallastown in an automobile owned by the husband. The night was dark, windy, and snow was falling. They had been proceeding at the rate of 25 to 30 miles an hour until they approached the tracks of the York Railways Company, which crossed the highway near the village of Spry, where the car was slowed down. At this point there appeared suddenly before them, at a distance of 35 or 40 feet, a large state highway truck, with a snow plow attached thereto, under the control of and operated by the defendant. Meads attempted to stop his automobile, but owing to the slippery condition of the road was unable to reduce his speed to less than 5 or 6 miles an hour. He tried to get around the truck on the right side but found that was impossible. He then attempted to pass on the left side, which he failed to do, and came in contact with the rear end of the truck. As a result, the car was damaged and Mrs. Meads sustained personal injuries.

Rutter, in his work of clearing the highway, had been operating the snow plow in the same direction plaintiffs were travelling, and after crossing the railway tracks where he raised the plow, he stopped his truck and directed his helper to go back and clear the crossing. The truck had been standing six or seven minutes when the accident occurred. The right wheels of defendant's truck, under Meads' testimony, were 5 or 6 feet from the right curb and the left wheels were close to the white line representing the middle of the road, but a portion of the body extended over this division line. The truck was 19 feet 4 inches long, the body 7 feet 2 inches wide, and the plow had a spread of 11 feet 5 inches, with an extra wing measuring 5

feet 10 inches. The wing could not be operated at right angles, and it does not definitely appear just how far it extended from the main part of the plow. The road was 18 feet wide with concrete sloping berm gutters each 6½ feet in width, making a total of 31 feet of concrete.

According to Meads, the truck was so located that another car could not pass it on either side, and it had no tail-light. Mrs. Meads said that although she was watching the road as the driving was dangerous, she did not see the truck until about the time they were crossing the tracks, nor did she observe any tail-light. Daniel Kaltreider, who was riding in a car following plaintiffs, testified that there was a tail-light on the truck "but it was very dim. You could hardly see it." Civil Engineer Michaels, called upon the part of the plaintiffs, stated that one riding in a car in the direction plaintiffs were travelling could see, under normal conditions, the road where the accident occurred 215 feet north of the railroad tracks.

Under the evidence offered by the plaintiffs, Meads, the driver of the car, was clearly guilty of contributory negligence. He was under legal obligation to operate his car at such a speed as to enable him to stop within a distance in which his lights would disclose the existence of any obstruction, even though his vision was shortened by a' storm or other condition.

As to the question of the wife's negligence, we think it cannot be said as a matter of law that she failed to exercise due care. There was no evidence that she had any control or voice in the management of the car, and, therefore, she was bound to exercise only reasonable care. That question was fairly submitted by the learned court below for the jury's determination. Simrell et ux. v. Eschenbach, 303 Pa. 156, 154 A. 369, is very similar in its facts to the case at bar, and supports the conclusions we have just expressed. There,

the defendant's truck had lost its power and was stopped on the side of a 24-foot pavement, leaving about 18 feet of open space on the left side of the truck. Under plaintiffs' testimony, there was no red light or other warning on the rear of the truck. The accident occurred about 4 a. m. on November 8, 1927. Suit was brought by the husband and wife. The court held that the husband was guilty of contributory negligence, but as the wife had no control or voice in the management of the car, the rule as to joint enterprise did not apply, and, as an occupant of the car, she was bound to exercise but reasonable care for her own safety. Under the circumstances existing there, the court held that the wife was not to be convicted of negligence by the fact that she did nothing. See, also, Shoffner v. Schmerin, 316 Pa. 323, 175 A. 516; Milliken v. United Laundries, 105 Pa. Superior Ct. 286, 161 A. 873.

The defendant offered evidence that the tail lamp was lighted, that his truck was next to the right curb, and that there was room for the plaintiffs to pass on the left side of the road. Our attention, in his behalf, is called to Shoffner v. Schmerin, supra, to support the contention that the plaintiffs' evidence was negative and insufficient to establish the absence of a tail-light. That case, however, actually turned on evidence which established conclusively plaintiff's contributory negligence. There, the plaintiff said he "did not see" a tail-light. Here, Meads, who was in a position to see, said there was none. If, as Kaltreider stated, the tail-light "was very dim. You could hardly see it," it was inadequate to warn vehicles following, and was not within the provision of the Vehicle Code of May 1, 1929, P. L. 905, §801 (d), as amended July 16, 1935, P. L. 1056, §14 (d) (77 PS §351), that every motor vehicle shall carry a rear lamp of a type which exhibits a red light, plainly visible under normal atmospheric conditions from a distance of 500 feet to the rear of such vehicle.

We have examined Urias v. Penn. R. R. Co., 152 Pa. 326, 25 A. 566; Rapp v. Central R. R. Co. of Pa., 269 Pa. 266, 112 A. 440; Galvin et ux. v. Kreider et ux., 293 Pa. 395, 143 A. 110, cited by the defendant, but do not find that they control the present case.

We must concede that the plaintiffs' testimony is not stronger than is necessary to establish defendant's negligence; but, viewing it in the light most favorable to the plaintiffs, as we must, we have concluded, after careful consideration, that it was sufficient for the jury to determine the question of defendant's negligence.

The defendant's final position is that in no event can there be a recovery against him as he was an agent of the Commonwealth exercising a governmental function, and "that the action is in reality against the Commonwealth of Pennsylvania."

An employee or officer of the Commonwealth is not a member of a privileged class—exempt from liability for his individual tort. It would be unfortunate, indeed, if one, who has sustained a wrong by an individual, would be remediless and not able to sue him the same as any other citizen because he was an agent, officer or employee of the Commonwealth. Like all others, he must personally answer for his wrongful acts, as the doctrine of respondeat superior does not prevail against this Commonwealth. The rule that a state is not liable for the negligence or misfeasance of its officers or agents, except where the legislature voluntarily assumes liability, is well recognized: 25 R. C. L. 407, §43. See, also, Collins v. Com., 262 Pa. 572, 106 A. 229. "The immunity of the state does not extend to its officers, and as a general rule state officers and agents are personally liable in tort for unauthorized acts committed by them in the performance of official duties:" 59 C. J. 146, §228.

In Elliott v. City of Phila., 75 Pa. 347, a municipal corporation was held not to be liable for the negligence

of its agents and employees. Judge THAYER, whose reasonings and conclusions were adopted by the Supreme Court, in the course of his able opinion, said (p. 351): "The corporation appoints [officers of the city] to office, but does not in that act sanction their official delinquencies or render itself liable for their official misconduct."

The defendant stresses the case of Lias v. Harmony Assn., 88 Pa. Superior Ct. 534. The old Harmony Society, a communistic organization with certain peculiar religious tenets, was dissolved and its real and personal property eventually escheated to the Commonwealth of Pennsylvania. By an act of assembly, this property was dedicated to the use of the public, and its custody was given to the Pennsylvania Historical Society, which entered into an agreement with the defendant, a corporation not for profit, for the purpose of preserving the traditions, etc., of the Harmony Society. The learned court below held that this dedication was in the nature of a public charity for educational purposes, and, therefore, the defendant was not liable for the death of a boy who was drowned in a pool on its premises. It will be noted that there was no question of the individual liability of an agent, as confronts us in the present case.

Judgments entered in the lower court are affirmed.