DuBree, Jr., Executor, *v.* Commonwealth, et al.

Argued February 5, 1973, before President Judge BOWMAN and Judges CRUMLISH, JR., KRAMER, WILKINSON, JR., MENCER, ROGERS and BLATT.

*Harry R. Nixon,* with him *Schneider & Nixon,* for appellant.

*Edward V. A. Kussy,* Assistant Attorney General, with him *Stuart M. Bliwas,* Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *J. Shane Creamer,* Attorney General, for appellee, Commonwealth.

*Richard P. McBride,* with him *Power, Bowen & Valimont,* for individual appellees.

OPINION BY JUDGE BLATT, April 9, 1973:

At about 11:30 p.m., on August 6, 1969, Roland DuBree (decedent) was operating his motor vehicle on

Street Road in Warrington Township, Bucks County. Two days previously a bridge had been removed, and an opening had been left in Street Road approximately twenty feet across, eighteen feet wide and ten feet deep. The decedent, apparently unaware of this excavation, crashed into it and suffered injuries which subsequently caused his death.

The appellant, as executor of the decedent's estate, brought an action in the Court of Common Pleas of Bucks County seeking to recover damages for the decedent's injuries and death. He named as defendants the Commonwealth of Pennsylvania, seven individuals employed by the Commonwealth, all in the Department of Highways (DH), and a corporation which leased equipment to the Commonwealth. The individual state employee defendants and their positions at that time were: Robert G. Bartlett, Secretary of Highways; Paul L. Thomas, District Engineer; Joseph Wade, Assistant District Engineer; John Auerbach, Superintendent, Maintenance Department; Oscar Kulp, Assistant Superintendent, Maintenance Department; Harry F. Snyder, Foreman; and Eugene C. Schad, Foreman. The appellant alleged that the bridge had been removed at or by the direction of the individual defendants and that no adequate warning of the excavation was provided for motorists.

The Commonwealth and the individual defendants filed preliminary objections to the complaint alleging that they were immune from tort liability. The corporate defendant, Protective Service, Inc., filed an answer to the complaint, but its status is not here at question. The lower court sustained the preliminary objections of the individual defendants and of the Commonwealth and dismissed the complaint against them. The appellant then filed appeals with this Court and with the Superior Court, and, by order of President Judge J. COLVIN WRIGHT dated June 12, 1972, the appeal filed

in the Superior Court was transferred to this Court for disposition.

This Court has consistently refused to overturn the doctrine of sovereign immunity as applied to the Commonwealth. *See Hall v. Powers and Commonwealth,* 6 Pa. Commonwealth Ct. 544, 296 A. 2d 535 (1972); *Duquesne Light Company v. Department of Transportation,* 6 Pa. Commonwealth Ct. 364, 295 A. 2d 351 (1972); *Lovrinoff v. Pennsylvania Turnpike Commission,* 3 Pa. Commonwealth Ct. 161, 281 A. 2d 176 (1971). Inasmuch as we can see no issue presented here which has not been adequately dealt with by these cases and the cases cited therein, we must hold that the lower court acted correctly in sustaining the preliminary objections filed by the Commonwealth, and, of course, in dismissing the complaint against the Commonwealth.

The question of the immunity from liability of the individual defendants presents a more difficult problem, however, because the courts of this Commonwealth have not followed a consistent path when dealing with this issue. A careful review of the cases decided indicates that liability may be different for each individual defendant, based upon the job he holds and its responsibilities. There seems to be no rule of immunity which applies uniformly to all officers and employees of the Commonwealth alike.

As to "high public officials," our Supreme Court considered the question of immunity in a defamation case involving the Attorney General, *Matson v. Margiotti,* 371 Pa. 188, 88 A. 2d 892 (1952). It held there that a high public official, *"when acting officially, and within the scope of his authority, has absolute privilege, protection and immunity from civil liability with respect to his official communications and his official acts."* (Emphasis in original.) 371 Pa. at 196, 88 A. 2d at 896. This ruling was followed in another defamation case, *Montgomery v. Philadelphia,* 392 Pa. 178, 140 A.

2d 100 (1958), in which the Court held that the Philadelphia Deputy Commissioner of Public Property and the City Architect were high public officials entitled to absolute immunity. Moreover, in *Jonnet v. Bodick,* 431 Pa. 59, 244 A. 2d 751 (1968), the Court made it clear that this doctrine was not confined to defamation cases, but that no action taken by a high public official (in that case, a township supervisor) in the course of his duties and within the scope of his authority deprives him of absolute immunity.

The Supreme Court, however, has yet to define clearly who is a "high public official." In *Montgomery v. Philadelphia, supra,* it suggests that the test of whether or not a public officer is in that category "should depend upon the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." 392 Pa. at 186, 140 A. 2d at 105. Based on such reasoning, it would appear that Secretary of Highways Bartlett was a high public official subject to absolute immunity and that Thomas, Wade, Auerbach and Kulp might also have been so characterized. But, even if there should not be sufficient evidence on the record as to the duties of these latter four so that we could make an informed decision as to whether or not they had policy-making functions, it must be noted that, as to them, there may well have been at least a conditional immunity implied.

It has long been held that the immunity of the Commonwealth, which may be attributed absolutely to it and to high public officials, may be attributed conditionally to others. In the first half of the 19th century, our Supreme Court developed the doctrine that the immunity of the Commonwealth must be imputed to its agents (usually corporate agents) if they are acting for the public's benefit and under the authority of the government. *Monongahela Navigation Company v. Coons,* 6 W. & S. 101 (1843); *Green v. The Borough of Reading,*

9 Watts 382 (1840). It was recognized that although the Commonwealth was sovereign, "this prerogative would be unavailing if it could not protect the agents whom the Commonwealth has necessarily to employ." *O'Connor v. Pittsburgh,* 18 Pa. 187, 189 (1851). In two cases decided in the 1860's, the Supreme Court established that public officials acting within the scope of their authority are not answerable in damages for the consequences of their acts unless malice and injury were the impelling motives. *Burton v. Fulton,* 49 Pa. 151 (1865); *Yealy v. Fink,* 43 Pa. 212 (1862). The Court stated in *Yealy, supra:*

"It is an undeniable principle that neither the state itself nor any persons natural or artificial, acting under its authority, are responsible for any damages occasioned by the construction of a highway, unless provision has been made for compensation. . . . The public officer is protected, however, only while acting within the limits of his authority.

. . . .

"[I]f a public officer acts maliciously or wantonly; if the work which he performs be done rather to injure a private individual than to discharge a public duty; he is responsible for the consequences." 43 Pa. at 215-216.

*Burton, supra,* and *Yealy, supra,* were apparently the last cases in which our Supreme Court dealt with this problem of immunity except in the context of "high public officials." There have been some other opinions, however, holding that public officials were immune from liability for ordinary acts of negligence unless they intentionally acted maliciously or wantonly. *See Thomas v. Osborn,* 39 Pa. D.&C. 2d 472 (1966); *Jenkins Sportswear v. City of Pittston,* 22 Pa. D.&C. 2d 566 (1960). It has been stated that "in order to fasten liability on a public official for acts done in an official capacity, it is necessary to plead that the acts were motivated by malice or an intent to injure." *Waters v.*

*Evans,* 47 Pa. D.&C. 2d 419, 420-421 (1969), *aff'd,* 218 Pa. Superior Ct. 141, 279 A. 2d 286 (1971). It might be noted that the federal courts, when interpreting Pennsylvania law, have followed *Burton, supra,* and *Yealy, supra. See Daye v. Commonwealth of Pennsylvania,* 344 F. Supp. 1337 (E.D. Pa. 1972); *Highway Paving Company v. Hausman,* 171 F. Supp. 768 (E.D. Pa. 1959).

It has also been held, on the other hand, that public employees have neither absolute nor conditional immunity, that they actually have no immunity at all. *See Hutchinson v. Mitterling,* 2 Pa. D.&C. 2d 793 (1955); *Watson v. Barnhart,* 33 Pa. D.&C. 290 (1938). In *Meads v. Rutter,* 122 Pa. Superior Ct. 64, 184 A. 560 (1936), the Superior Court stated: "An employee or officer of the Commonwealth is not a member of a privileged class-exempt from liability for his individual tort. It would be unfortunate, indeed, if one, who has sustained a wrong by an individual, would be remediless and not able to sue him the same as any other citizen because he was an agent, officer or employee of the Commonwealth. Like all others, he must personally answer for his wrongful acts, as the doctrine of respondeat superior does not prevail against this Commonwealth." 122 Pa. Superior Ct. at 69, 184 A. at 562.

The Court in *Meads, supra,* cited neither *Burton, supra,* nor *Yealy, supra,* and it should be noted that, when very recently faced with this issue, the Superior Court chose to hold that a form of immunity does exist for public officials. *Ammlung v. City of Chester,* 224 Pa. Superior Ct. 47, 302 A. 2d 491 (1973). In that case, the Court held that a complaint against a police officer was sufficient because it satisfactorily alleged wanton conduct on the part of the police officer which resulted in the death of a prisoner. The Court therein stated: "The rule that employees of the sovereign may avoid liability with respect to certain conduct which would

otherwise be tortious is of long standing. . . . It is designed to prevent an excess of caution, based upon considerations of personal liability or subjection to suit, from influencing a decision requiring the exercise of judgment. . . . On balance, it is thought that the injury to the public resulting from an overcaution by officials on matters of judgment would outweigh the injury to private persons which would result from an absence of caution." (Footnotes omitted.) 224 Pa. Superior Ct. at 52, 302 A. 2d at 494.

Upon a careful review and evaluation of these precedents, it appears to us that the doctrines expounded in *Burton, supra,* and *Yealy, supra,* are still the law of Pennsylvania and must be adhered to by this Court, and, since we continue to credit the Commonwealth with sovereign immunity, it is still as true as it was in the 19th century that such immunity would be unvailing if there were not also some form of immunity granted to those officers and employees whom the Commonwealth must necessarily employ.

In expressing its reasons for granting absolute immunity to high public officials, the Supreme Court noted that society has an interest in protecting the unfettered discharge of the public business and that absolute immunity would be a means of removing any inhibition which might deprive the public of the best services of its officers. *Montgomery v. Philadelphia, supra.* It would also seem reasonable to hold that a conditional immunity applied to those public officers and employees not entitled to absolute immunity would protect the public in much the same manner, and it would seem equally reasonable that the conditions of this immunity be that the official be acting within the scope of his authority and that his negligent conduct must not be intentionally malicious, wanton or reckless. To place liability upon a public official who is not a high public official, therefore, it is merely necessary to show that

the officer concerned was not acting within the scope of his authority, and that the conduct complained of was intentional, as well as malicious, wanton or reckless. He may escape liability, however, if he did act within the scope of his authority and if his negligent conduct was not intentionally malicious, wanton or reckless.

In this case, the allegations obviously lack specificity, but, giving them the greatest possible weight, they point to nothing more than ordinary negligence. Clearly, they do not point to such intentionally malicious, wanton or reckless conduct as would overcome a presumption of conditional immunity, and, in no way could they overcome any presumption of absolute immunity.

For the above reasons, therefore, we affirm the order of the lower court in sustaining the preliminary objections filed by the Commonwealth and by the individual defendants and in dismissing the complaint as to those parties.

---

DISSENTING OPINION BY JUDGE CRUMLISH, JR.:

With regard to the issue of the Commonwealth's liability, I agree that the majority is correct in its interpretation of the state of the law as recently reaffirmed in *Biello v. Pennsylvania Liquor Control Board*, Pa. , A. 2d (1973) (Filed March 16, 1973), although I do not agree with the substance of the law. See my dissenting opinion in *Lovrinoff v. Pennsylvania Turnpike Commission*, 3 Pa. Commonwealth Ct. 161, 281 A. 2d 176 (1971). *See also,* the dissenting opinion of Justice NIX in *Biello.*

The issue of conditional immunity, however, is not so easily dismissed. The argument for the invocation of immunity for public officials is based on society's interest in the unfettered discharge of public business. *Montgomery v. Philadelphia*, 392 Pa. 178, 183, 140 A. 2d 100, 103 (1958). Hopefully, the availability of such immu-

nity will enable a public official to strive for the best possible effectuation of his duties without fear of repression. The countervailing argument is that such a procedure enhances the possibility of significant public and private harm without co-equal responsibility. *Montgomery, supra* at 184, 140 A. 2d 103-104. In balance, the need for effective public service generally outweighs the possibility of harm.

These policy considerations apply to both absolute and conditional immunity with the distinction being that only a high public official may claim absolute immunity and this is so even if he is motivated by malice. *See Montgomery, supra* at 182-183, 140 A. 2d at 103. Allowance of immunity is also sanctioned only if the actions were taken in the course of one's official duties and within the scope of his authority.

In the instant situation, however, there seems to have been no inquiry into the duties or scope of employment of the named defendants. Nor was the actual propriety or possible misfeasance of their actions brought out. Our Supreme Court in *Montgomery, supra,* has stated that a "qualified privilege could be successful only after a full trial," 392 Pa. at 183, 140 A. 2d at 103, thus implying that the actual scope of authority and actual duties should be brought out.

Furthermore, *Yealy v. Fink,* 43 Pa. 212 (1862), which is relied upon by the majority, provides that a public official "cannot recklessly, wantonly or maliciously invade private rights, and protect himself under the authority of the law." 43 Pa. at 216-217. *Prosser* on Torts (4th Ed. 1971) at p. 185 states that " 'wilful,' 'wanton' or 'reckless' conduct tends to take on the aspect of highly unreasonable conduct, or an extreme departure from ordinary care, in a situation where a high degree of danger is apparent." Prosser further states that an action which could be considered wanton, etc., "is never admitted, and can be proved only by the

conduct and the circumstances." Id. at 185. The high degree of danger in removing a bridge is certainly "apparent," yet there was no inquiry into just how negligent these defendants were in the process of that removal and subsequent warning of it, if there was any warning at all.

Such inquiry into the possible negligence of two city policemen who were in charge of the city jail facilities was directed by our Superior Court in *Ammlung v. City of Chester,* 224 Pa. Superior Ct. 47, 302 A. 2d 401 (1973). A suit had been instituted against the two lower city officials on the basis of their alleged negligence in connection with the death of a detainee in jail. The court there held that preliminary objections based on immunity should not have been sustained as a matter of course. On the issue of conditional immunity, the court felt that the alleged acts of the defendants and evidence thereof should be weighed against the public interest in the unfettered discharge of public duties before this issue should be decided.

I would remand this case with leave to amend the pleading in order that such inquiry be made.

Judge KRAMER joins in this Dissenting Opinion.