## Zinna v. McDougald

*Harry J. Gruener,* for plaintiff.
*Theodore E. Breault,* for defendant.

LYON, *J.*, January 30, 1975 — Before the court for determination is defendant's motion for summary judgment pursuant to Pa.R.C.P. 1035. The motion is bottomed upon a claim of sovereign immunity.

It is well established that the court can sustain a summary judgment only if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law: Pa.R.C.P. 1035(b); Michigan Bank

v. Steensen, 211 Pa. Superior Ct. 405, 236 A. 2d 565 (1967). The record must be examined in the light most favorable to the nonmoving party: Schacter v. Albert, 212 Pa. Superior Ct. 58, 239 A. 2d 841 (1968). The court must accept, as true, all well-pleaded facts in the nonmoving party's pleadings, giving that party the benefit of all reasonable inferences to be drawn therefrom. Finally, a summary judgment should be granted only when the case is clear and free from doubt: Mallesky v. Stevens, 427 Pa. 352, 235 A. 2d 154 (1967); Toth v. Philadelphia, 213 Pa. Superior Ct. 282, 247 A. 2d 629 (1968).

The trespass action in the instant proceedings was commenced by a complaint to which defendant responded with an answer asserting a claim of sovereign immunity. Thereafter, depositions of Mary Chambers and Paul Zinna were filed of record. The depositions of defendant were not filed of record and, therefore, cannot be considered in this adjudication even though some of the docketed papers indicate an intent to take such a deposition and the parties have referred to it in their briefs. Lastly, defendant filed, as part of the record, two affidavits in support of the summary judgment motion.

From a careful examination of the foregoing papers, we have satisfied ourselves that they fail to allege any facts in support of any claim against the individual defendant as an individual other than as a representative of the Commonwealth of Pennsylvania. According to the complaint, defendant was the Director of the New Castle Youth Development Center on February 8, 1970, when one of the wards of that institution wantonly and willfully poured boiling liquid onto the face and into the ear of the minor plaintiff, also a ward of the institution, caus-

ing severe and serious injuries. The complaint asserts that the injuries were the proximate result of defendant's negligence in several specific respects because he failed to act reasonably to protect the minor plaintiff after he knew, or should have known in the exercise of reasonable care, that the ward causing the injury had previously possessed and displayed vicious and dangerous propensities; that defendant unreasonably failed to employ competent and adequate staff personnel for the New Castle Youth Development Center; that defendant otherwise failed to use reasonable care to provide safe surroundings for the care and maintenance of plaintiff; that defendant failed to use reasonable care to provide competent medical attention for minor plaintiff after he learned of the injuries; and that defendant otherwise failed to exercise reasonable care under the circumstances. Each of the asserted acts of negligence was bottomed upon the violation of a duty allegedly owed by defendant to minor plaintiff by reason of his employment as the Director of the New Castle Youth Development Center, and none of the alleged acts of negligence concerned the violation of any duty of defendant in his individual capacity. All alleged acts of negligence concern the nonperformance or negligent performance of duties imposed upon defendant as Director of the New Castle Youth Development Center. Hence, it is apparent that the rule of sovereign immunity is applicable to the instant proceedings: Brungard v. Hartman, 12 Pa. Commonwealth Ct. 447, 315 A. 2d 913 (1974); Jaffurs v. O'Neill, 10 Pa. Commonwealth Ct. 346, 310 A. 2d 698 (1973). Cf. Biello v. Pennsylvania Liquor Control Board, 454 Pa. 179, 301 A. 2d 849 (1973).

In DuBree, Jr., Executor, v. Commonwealth, 8

Pa. Commonwealth Ct. 567, 303 A. 2d 530 (1973), the Commonwealth Court delineated the scope of the individual liability and concomitant immunity of public officials and employes of this Commonwealth:

"As to 'high public officials,' our Supreme Court considered the question of immunity in a defamation case involving the Attorney General, Matson v. Margiotti, 371 Pa. 188, 88 A. 2d 892 (1952). It held there that a high public official, *when acting officially, and within the scope of his authority, has absolute privilege, protection and immunity from civil liability with respect to his official communications and his official acts.*' (emphasis in original): 371 Pa. at 196, 88 A. 2d at 896. This ruling was followed in another defamation case, Montgomery v. Philadelphia, 392 Pa. 178, 140 A. 2d 100 (1958), in which the court held that the Philadelphia Deputy Commissioner of Public Property and the City Architect were high public officials entitled to absolute immunity. Moreover, in Jonnet v. Bodick, 431 Pa. 59, 244 A. 2d 751 (1968), the court made it clear that this doctrine was not confined to defamation cases, but that no action taken by a high public official (in that case, a township supervisor) in the course of his duties and within the scope of his authority deprives him of absolute immunity.

"The Supreme Court, however, has yet to define clearly who is a 'high public official.' In Montgomery v. Philadelphia, supra, it suggests that the test of whether or not a public officer is in that category 'should depend upon the nature of his duties, the importance of his office, and particularly whether or not he has policymaking functions.': 392 Pa. at 186, 140 A. 2d at 105.

". . .

"To place liability upon a public official who is not a high public official . . . it is merely necessary to show that the officer concerned was not acting within the scope of his authority, and that the conduct complained of was intentional, as well as malicious, wanton or reckless.": 8 Pa. Commonwealth Ct., at 570, 571, 574, 575, 303 A. 2d at 532, 534.

The affidavit filed by T. A. Sawyer, Jr., Director of Administrative Services, Department of Public Welfare, Commonwealth of Pennsylvania, as well as the affidavit of defendant, himself, are uncontroverted and are sufficient to prove: (1) that the New Castle Youth Development Center was an agency of the Commonwealth of Pennsylvania, and an arm of the Department of Welfare of the Commonwealth of Pennsylvania; (2) that as Director of the New Castle Youth Development Center, defendant ranked fifth in the Commonwealth hierarchy under the Governor, and was responsible for the implementation of programs of the Commonwealth of Pennsylvania as set forth in guidelines propounded by the Commonwealth of Pennsylvania; (3) that defendant exercised a great degree of discretion as Director of the New Castle Youth Development Center; and (4) that the Director of the New Castle Youth Development Center has policymaking functions. Hence, it appears from the affidavit that the duties imposed upon the Director of the New Castle Youth Development Center satisfies the test for a high public official as set forth in Montgomery v. Philadelphia, supra.

We have no difficulty in concluding that at all times material to this cause of action defendant as the Director of the New Castle Youth Development Center was a high public official acting within the scope of his authority and that he is, therefore, enti-

tled to absolute immunity from civil liability with respect to complained of official acts or omissions. The authority of McCoy v. Liquor Control Board, 9 Pa. Commonwealth Ct. 107, 305 A. 2d 746 (1973), affirmed per curiam 457 Pa. 513, 326 A. 2d 396 (1974), lends support to this conclusion. In that case, it was held that a defendant in charge of a State-operated hospital is a high public official and entitled to absolute immunity. Since the Department of Public Welfare is responsible for the operation of State hospitals as well as the operation of State youth development centers, it is reasonable to assume that officers in charge of such institutions are charged with similar responsibilities and given similar authority over their operations. Hence, it is reasonable to conclude that the officer in charge of a State-operated youth development center, like an officer in charge of a State-operated hospital, is a high public official entitled to absolute immunity.

## ORDER

Now, January 30, 1975, for the reasons stated in the foregoing opinion, it is ordered, adjudged and decreed that defendant's motion for summary judgment be, and herewith is granted.