## County of Northumberland v. The West End National Bank of Shamokin

*Sanford S. Marateck*, of *Lark, Makowski & Marateck*, for plaintiff.

*Jack C. Younkin*, of *Wiest & Younkin*, and *Matthew M. Strickler*, of *Ballard, Spahr, Andrews & Ingersoll*, for defendant.

*Sidney J. Apfelbaum, Michael J. Robinson,* of *Candor, Youngman & Gibson, John A. Carpenter,* of *Carpenter, Carpenter & Diehl, George J. Nagle, Carl Rice,* of *Rice & Rice,* and *Duane, Morris & Heckscher,* for additional defendants.

KIVKO, *P. J.,* December 19, 1975—Once again, we have before us preliminary objections in the nature of a demurrer and for a more specific complaint on behalf of some of the 14 additional defendants in this matter. In County of Northumberland v. The West End National Bank of Shamokin (I), 47 Northumb. 216 (October 7, 1975), this court sustained the objections raised by two of the additional defendants, Travelers Indemnity Company and United States Fidelity and Guaranty Company, who were sureties on bonds issued in favor of additional defendants, Robert G. Perles and George C. Conbeer. Each of the remaining additional defendants filed preliminary objections, with the exception of Perles and the Fidelity and Deposit Company of Maryland (surety for additional defendant, W. Fred Kohler, Jr.). These objections will now be considered together.

This action was instituted in assumpsit by the County of Northumberland ("county") against The West End National Bank of Shamokin ("bank") to recover $56,389.02 in county funds embezzled over a three and a half year period by Perles, an employe-bookkeeper at the county home and hospital. It is alleged that these moneys were wrongfully paid over to Perles by the bank upon his presentment of checks belonging to the county. The bank, in addition to an answer with new matter, has filed a complaint, joining as additional defendants Perles, his immediate supervisor, George C. Con-

beer, the county commissioners and the county treasurer (those presently in office and their immediate predecessors), and their respective sureties. With respect to the county officers, their joinder is predicated upon allegations of their breach, as individuals, of their common-law and statutory duties in their control over county funds, certain misrepresentations they had made to the bank, and their negligent supervision of Perles. As for Conbeer, similar averments are made, and it is further alleged that he made certain warranties to the bank by the execution with Perles of an attached signature card for a checking account in the name of the county home and hospital. The liability of the sureties is attributed to their obligations under their bonds for the acts of the county officers. In each instance, additional defendants are alleged to be solely, jointly or severally liable to the county with the bank, or liable over to the bank on the county's complaint.

## I

We will first consider the preliminary objections in the nature of a demurrer filed by the county officers, namely, James P. Kelley, Lawton W. Shroyer, William J. Rumberger, Oscar Kehler, county commissioners, and W. Fred Kohler, Jr., and Larry V. Snyder, county treasurers. Their principal claim is that of immunity.

The shield from civil liability accorded public officials in Pennsylvania can be traced back to the early cases of Yealy v. Fink, 43 Pa. 212 (1862), and Burton v. Fulton, 49 Pa. 151 (1865), holding that public officers are answerable only for wanton and malicious conduct when acting within the course of their duties: Lehnig v. Felton, 235 Pa. Superior Ct.

100, 340 A. 2d 564 (1975); Ammlung v. Platt, 224 Pa. Superior Ct. 47, 302 A. 2d 491 (1973); Kovach v. Toensmeier Adjustment Service, Inc., 14 Pa. Commonwealth Ct. 214, 321 A. 2d 422 (1974); Du-Bree v. Commonwealth, 8 Pa. Commonwealth Ct. 567, 303 A. 2d 530 (1973). Of more recent vintage in this Commonwealth is the concept of absolute immunity granted to "high public officials": Matson v. Margiotti, 371 Pa. 188, 193-94, 88 A. 2d 892, 895 (1952); Montgomery v. Philadelphia, 392 Pa. 178, 182-83, 140 A. 2d 100, 103 (1958). Based on considerations of public policy, "absolute privilege, as its name implies, is unlimited, and exempts a high public official from all civil suits for damages arising out of false defamatory statements and even from statements or actions motivated by malice, provided the statements are made or the actions are taken in the course of the official's duties or powers and within the scope of his authority, or as it (is) sometimes expressed, within his jurisdiction" Id. In Jonnet v. Bodick, 431 Pa. 59, 244 A. 2d 751 (1968), the court made it clear that these principles were not to be confined to defamation actions only.

The distinction between high and low public officials, determinative of the type of protection one is entitled to, was set forth in Montgomery v. Philadelphia, supra. Although the court could not specifically categorize those public officials clothed with absolute protection, in contrast to those with only the conditional immunity of Yealy and Burton, it did suggest that it "should depend upon the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions" 392 Pa., at 186, 140 A. 2d, at 105. The

responsibilities must be such that the public interest demands their uninhibited performance.

Applying this test, there can be no doubt that the county commissioners and county treasurers are so included. They are the top officials of the county and, as such, are faced largely with significant policy questions. Their positions in the county are somewhat analogous to that of township supervisors in a municipality, who were held to be "high public officials" in Jonnet v. Bodick, supra. Others judicially specified as being within the doctrine are Philadelphia's deputy commissioner of public property and the city architect (Montgomery v. Philadelphia, supra) and members, or those in charge of, numerous boards, departments and hospitals of the Commonwealth in McCoy v. Commonwealth, 9 Pa. Commonwealth Ct. 107, 305 A. 2d 746 (1973). In view of these decisions, the same conclusion is naturally reached as to the county officers in question.

The defense of absolute immunity may properly be raised by preliminary objections in the nature of a demurrer when the immunity appears from the face of the complaint: Greenberg v. Aetna Insurance Co., 427 Pa. 511, 235 A. 2d 576 (1967). See DuBree v. Commonwealth, supra. The bank contends the doctrine is unavailing to these officers, however, for two reasons: (1) they allegedly violated their statutory duties in their control over the county funds and thus exceeded the scope of their authority, and (2) governmental immunity has been abolished in the Commonwealth.

On the latter point, the bank's premise is that a public official's immunity for personal civil liability is derived from the immunity of their governmental unit. According to the bank, since the doctrine of

governmental immunity was overturned in Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A. 2d 877 (1973), the only privilege of immunity which is left is the sovereign immunity of the Commonwealth itself, which may be invoked by *its* high governmental officials. From our review of the doctrines involved, however, it is clear that the public officials' immunity and that of the governmental unit are separate concepts. The original reasons originally thought important enough to justify governmental immunity, such as the floodgates argument, the absence of a fund for payment of the liability claims, and the notion that " 'it is better that an individual should sustain an injury than that the public should suffer an inconvenience,' " enumerated in Ayala, are wholly apart from those forming the basis of the absolute or conditional protection accorded public officials. Among these reasons are "the protection of society's interest in the unfettered discharge of public business . . ." (Montgomery v. Philadelphia, supra, 392 Pa., at 183, 140 A. 2d, at 103), and the "fear that progress would be placed in a permanent holding pattern wherein no advance was made, but rather officials would be concerned solely with constantly rechecking what has already been done" Lehnig v. Felton, supra, 340 A. 2d, at 566. See Barr v. Matteo, 360 U.S. 564, 571, 79 S. Ct. 1335, 3 L.Ed. 2d 1434, 1441 (1958); Spalding v. Vilas, 161 U.S. 483, 16 S. Ct. 631, 40 L.Ed. 780 (1896). Moreover, while it has been stated that the Commonwealth's employes' immunity is consonant with that of sovereign immunity (e.g., in DuBree v. Commonwealth, supra), this is not an expression by these courts that the two are tied together, the latter the sustaining force of the other. It is inconceivable, in light of the public

interests the doctrine of immunity of public officials fosters, that any distinction could be further drawn, outside of the dichotomy between high and low officials, between Commonwealth employes and those of other governmental units. We are unaware of any authority dictating such an anomalous result. Accordingly, we find this argument to be completely without merit.

The bank's other contention rests on the limitation on the cloak of immunity to only those acts within the scope of the official's authority: Matson v. Margiotti, supra. It is specifically argued that section 1762 of The County Code, infra, was violated by these officers and they thus exceeded their authority when, as averred in the bank's complaint, they represented to it that Perles and Conbeer had the authority to maintain a checking account and permitted them to continue doing so in connection with the Northumberland County Home and Hospital, and to present for collection, deposit and payment on Perles' and Conbeer's signatures, checks owned by, or payable to, this county institution. By authorizing and allowing them to maintain this checking account, it is argued, these officers created the "opportunity" for Perles' conduct, or set the events in motion.

Section 1762 of The County Code of August 9, 1955, P.L. 323, as amended, 16 P.S. §1762, provides, in pertinent part:

"(a) The county commissioners together with the county treasurer shall, from time to time, designate, by resolution, a depository or depositories for all county funds . . . (c) The county treasurer shall, upon the designation of such depository or depositories, immediately, transfer thereto all county funds, and shall, thereafter, keep such de-

posits solely in such depository or depositories in the name of the county. Withdrawal from such depository shall be, only upon properly authorized checks, drawn by the county treasurer."

Thus, the county officers here exceeded their authority if, as alleged, a separate account for the Northumberland County Home and Hospital was maintained apart from the county-designated depositories. It is axiomatic that the allegations of the opposing party, the bank, must be accepted as true upon our consideration of the demurrers.

Yet, liability cannot be imposed unless the breach of an obligation (owed here to the county) is relevant to the circumstances alleged in the pleadings. It is nowhere alleged, either in the bank's complaint or that of the county, that the checking account for the county home and hospital was the source of the funds obtained by Perles. In other words, it is not averred that he withdrew funds from this account. If he did, the missing sums could have been readily detected by the county officers. On the contrary, the funds never entered the account, but, according to the county's complaint, were paid over to Perles upon his presentment of checks bearing the legend "Northumberland County Home and Hospital."

The crux of the matter is that it involves public funds and public officials. See Huntingdon County v. First-Grange National Bank, 20 D. & C. 2d 418 (1959). In spite of the bank's allegation that these public officers authorized Perles and Conbeer to present checks owned by, or payable to, the county for payment on these employes' signatures, the bank could not rely on such a representation. "A person who deals with a government official is bound to know the limitations of that official's au-

thority and to govern himself accordingly": Luzerne Township v. Fayette County, 330 Pa. 247, 252, 199 Atl. 327, 330 (1938). And, under the statutory scheme for the handling of county funds, sections 1751, 1760, and 1762 of The County Code, supra, "all moneys are required to be deposited in the officially named depository and disbursements may be made only by checks signed by the commissioners and the treasurer . . . [and thus] there is no authority in *anyone* . . . to endorse checks and to receive cash therefor." Huntingdon County v. First-Grange National Bank, supra, at 425. (Emphasis supplied.)

In Sims Printing Co. v. Kerby, 56 Ariz. 130, 134-35, 106 P. 2d 197, 199 (Arizona, 1940), the following principle was relied on, and we deem it of particular importance in the situation before us: "When public agents, in good faith, contract with parties having full knowledge of the extent of their authority, or who have equal means of knowledge with themselves, they do not become individually liable, unless the intent to incur a personal responsibility is clearly expressed, although it should be found that through ignorance of the law, they may have exceeded their authority." See 67 C.J.S., Officers, §130. The court then explained the rationale of the rule: "Being a public agent with his powers and duties prescribed by law, the extent of his powers are presumed to be as well known to all with whom he contracts as to himself. When therefore there is no want of good faith, a party contracts with such an officer with his eyes open, and has no one to blame if it should afterwards appear that the officer had not the authority which it was supposed he had. Were the rule otherwise, few persons of responsibility would be found willing to serve the public in that

large class of offices, which requires a sacrifice of time and perhaps money, but affords neither honor nor profit to the incumbent.''

Turning to Conbeer's demurrer, we find that the foregoing applies to the bank's allegations against him with equal weight, although, in the first instance, he is not entitled to absolute immunity. However, as the director of the county home and hospital, he is accorded conditional immunity which is sufficient to sustain his demurrer here, since all that is alleged by the bank is his negligence: Yealy v. Fink, supra; Burton v. Fulton, supra; Lehnig v. Felton, supra; Ammlung v. Platt, supra. While, in addition to the same averred conduct of the county officers, it is alleged that he executed a signature card for a checking account with Perles at the bank for the county institution, this act is only one other factor, along with the alleged representations of the county officers, in the establishment of the checking account contrary to section 1762 of The County Code, supra. It has no special significance. As we've pointed out earlier, the existence of the checking account has no bearing upon liability for the reason that it is not alleged Perles withdrew funds from the account. It is averred he received the proceeds of county checks upon his presentment of them at the bank, which would be contrary to the provisions of The County Code, of which the bank was chargeable with notice: Huntingdon County v. First-Grange National Bank, supra. Under these circumstances, Conbeer cannot be found individually liable.

We conclude that the bank's complaint has failed to state a cause of action for civil liability against these additional defendants that either it or the county can assert. This brings us to the question of

the surety companies' liability in this action upon their statutory fidelity bonds covering the county commissioners' and treasurer's discharge of their official duties.

## II.

Upon taking office, the county commissioners and treasurer are required by statute to "give and acknowledge a bond to the county" Section 420 of The County Code, supra, 16 P.S. §420. Such an undertaking makes the principal liable on his bond for his own negligent acts or misconduct committed in the performance of his duties: Commonwealth, to the use of Orris v. Roberts, 392 Pa. 572, 141 A. 2d 393 (1958); Restatement, Security, Intro. Note, Chap. 8, Official Bonds, pages 468-69 (1941). Recovery by an injured party, however, is predicated upon whether the individual is within the category of designated beneficiaries under the bond. Otherwise, a liability would be imposed upon the principal for which he is not responsible, as the surety ultimately has recourse against the principal for any payments it must make under the bond: Commonwealth, to the use of Orris v. Roberts, supra.

With this in mind, we cannot agree with the bank's principal contention that it is an obligee under the bonds issued by additional defendants, Maryland Casualty Company, American Motorist Insurance Company and Transamerica Insurance Company pursuant to sections 421 and 422 of The County Code, supra, 16 P.S. §§421 and 422, *in the event* the bank should be found liable in this action *to the county*. More specifically, the bank's position is that if the county is successful in this action, it will thus transfer to the bank its interest in the

missing funds. Having this interest in the funds, it is argued, the bank would thus fall within the class of obligees created by the following language of section 422: "Each official bond . . . shall be for the use of the county and the Commonwealth and for the use of such other person or persons for whom money shall be collected or received, *or as his or her interest shall otherwise appear*, in case of a breach of any of the conditions thereof by the acts or neglect of the principal on the bond." (Emphasis supplied.)

It is apparent, however, that if this contingency in the bank's argument does occur, that is, the bank is found liable to the county, then the bank is a wrongdoer here. Clearly, the legislature did not intend that a wrongdoer could thus become an obligee and proceed upon these "official bonds." The statutory language of this type of bond cannot be interpreted in a way that would allow a suit against a public official, otherwise barred, by virtue of the county's recovery against it. This proposition is simply untenable.

Aside from the fact that these additional defendants' bonds are controlled by section 422 rather than section 429 of The County Code, supra, 16 P.S. §§422 and 429 respectively, the allegations against them in the bank's complaint are the same as those against the two bonding companies before this court in our previous opinion: County of Northumberland v. The West End National Bank of Shamokin (I), supra. Our conclusions therein are equally applicable to the parties at bar and require no further elaboration here.

### III.

The bonding companies, in addition to filing pre-

liminary objections in the nature of a demurrer, also filed preliminary objections in the nature of motions for more specific complaints. These are based generally on alleged vagueness of the complaints, the bank's failure to attach copies of the surety bonds as required by Pa.R.C.P. 1019(h), or to link the specific bonding company with the county officer or employe it covers or to specify the period of the claim as to each. We recognize the merit of these objections but, in view of availability of discovery, it must be noted that the parties are not without other remedy. In any event, we find it unnecessary to further discuss or deal with these objections in view of the disposition made of the preliminary objections in the nature of a demurrer.

Accordingly, we enter the following

## ORDER

And now, December 19, 1975, for the reasons set forth above:

1. The complaint of defendant, The West End National Bank of Shamokin, against additional defendant, William J. Rumberger, is dismissed;

2. The complaint of defendant, The West End National Bank of Shamokin, against additional defendant, Lawton W. Shroyer, is dismissed;

3. The complaint of defendant, The West End National Bank of Shamokin, against additional defendant, Oscar Kehler, is dismissed;

4. The complaint of defendant, The West End National Bank of Shamokin, against additional defendant, James P. Kelley, is dismissed;

5. The complaint of defendant, The West End National Bank of Shamokin, against additional defendant, W. Fred Kohler, Jr., is dismissed;

6. The complaint of defendant, The West End

National Bank of Shamokin, against additional defendant, Larry V. Snyder, is dismissed;

7. The complaint of defendant, The West End National Bank of Shamokin, against additional defendant, George Conbeer, is dismissed;

8. The complaint of defendant, The West End National Bank of Shamokin, against additional defendant, Maryland Casualty Co., is dismissed;

9. The complaint of defendant, The West End National Bank of Shamokin, against additional defendant, American Motorist Insurance Co., is dismissed; and

10. The complaint of defendant, The West End National Bank of Shamokin, against additional defendant, Transamerica Insurance Company, is dismissed.