## Vartan Associates, Inc. v. Mount Joy Borough Authority

*Bruce A. Grove, Jr.,* for plaintiff.
*Metzger, Wickersham, Knouss & Erb* and *Barley, Snyder, Cooper & Barber,* for defendants.

MUELLER, *J.,* March 2, 1978—On August 22, 1977, plaintiff, Vartan Associates, Inc., filed a complaint in trespass against the Mount Joy Borough Authority and five members of the authority board. The complaint is in two counts. Count I alleges an action in fraud and deceit. Count II alleges a violation of a legislative enactment. Preliminary objections to the complaint were filed on behalf of all defendants on September 20, 1977, and are now before the court for disposition. These objections are in the form of a demurrer to both counts of the complaint, a motion to strike portions of both counts, and a motion for more specific pleading as to Count II.

Taking all of plaintiff's allegations as true, which we must for purposes of a demurrer, the facts may be briefly summarized as follows: In February, 1977, Joseph S. Bateman, administrator of the Mount Joy Borough Authority, acting as agent for the defendants in this case, approached Vartan O. Keosheyan, president of plaintiff, Vartan Associates, Inc. (Vartan), and asked him to submit a proposal for the completion of certain engineering work necessary to construct a certain sewage treatment facility. On or about March 1, 1977, Bateman advised Keosheyan that defendants had decided at their monthly meeting to request Vartan and another engineering firm to submit proposals for doing the remaining engineering work.

On or about March 3, 1977, Keosheyan advised Bateman that plaintiff would not submit the requested proposal because he believed that plain-

tiff's chances of being awarded the contract were almost nonexistent and that plaintiff did not want to expend any effort in a matter that had a foregone conclusion. Several days later Bateman called Keosheyan and stated to him that defendants had discharged their consulting engineers, Gannett, Fleming, Corddry & Carpenter, and that if defendants did not feel that plaintiff could do the job they would not have requested of plaintiff that it submit a proposal, and that if plaintiff's proposal were the lowest priced proposal, Bateman would recommend to the authority that plaintiff be retained as engineer to complete the work, and that board members Sweigart and Grissinger were of the same intent. On March 17, 1977, Bateman, acting as agent for the authority, sent a letter to Keosheyan confirming that the authority had fired Gannett, Fleming, Corddry & Carpenter and asking Vartan to submit a proposal to the authority for completion of the upgrading of the sewer facility. In reliance upon these written and oral statements, plaintiff prepared a proposal at a cost of $1,464.62 and submitted it to the authority. Plaintiff's proposal was the lowest priced engineering proposal which was submitted to the authority, but at its regular monthly meeting of April 5, 1977, the authority announced that Gannett, Fleming, Corddry & Carpenter would continue to do the engineering work.

Plaintiff has further alleged that when defendant Bateman made his written and oral representations to Keosheyan he knew that they were false and has alleged that the statements were made with the intent to deceive and defraud plaintiff into preparing the proposal. Plaintiff has also alleged that it relied upon these statements in going forward in preparing and submitting its proposal to defendant authority.

## COUNT I—DEMURRER

The legal issue presented to the court is whether these facts state a cause of action for fraud and deceit. At the outset it should be noted that were this action based solely upon the failure of the authority to award the engineering contract to the lowest bidder, namely plaintiff here, plaintiff would have no basis for recovery, and the court would not hesitate to dismiss the complaint. It is well settled that a disappointed low bidder has sustained no personal injury which entitles him to redress in court, even if the public official who refuses to award him the contract has a statutory obligation to award it to the lowest bidder. See R. S. Noonan, Inc. v. York School District, 400 Pa. 391, 162 A. 2d 623 (1960). Plaintiff concedes this legal principle in paragraph 8 of its complaint and indeed had recognized it even before submitting its proposal to the authority.

However, the basis of plaintiff's action in Count I is not merely an action by a disappointed low bidder against a public official who has failed to perform a statutory duty, as was the case in Noonan, but rather an action in fraud and deceit. The elements of an action for fraud and deceit are: "(1) a misrepresentation, (2) a fraudulent utterance thereof, (3) an intention by the maker that the recipient will thereby be induced to act, (4) justifiable reliance by the recipient upon the misrepresentation and (5) damage to the recipient as the proximate result." Neuman v. Corn Exchange Nat. Bank & Trust Co., 356 Pa. 442, 450, 51 A. 2d 759, 763 (1947).

The issue before the court is whether plaintiff has alleged facts which, if proven, would meet the elements as outlined above. The court finds that plain-

tiff has clearly pleaded facts which establish a misrepresentation (that authority had discharged Gannett, Fleming, Corddry & Carpenter and that if Vartan submitted the lowest bid it would get the contract), a fraudulent utterance (oral statements by Bateman acting as agent for the authority to Keosheyan), intention by the maker that the recipient thereby be induced to act (intent alleged as to defendant Bateman acting as agent for authority), and that damage to the recipient proximately resulted from reliance on the misrepresentation [costs incurred in preparing proposal]. The question which is raised by defendants' demurrer is whether plaintiff's reliance on these statements was justifiable. Defendants assert that even taking plaintiff's allegations at face value, the most which Bateman represented was that he would recommend that the authority accept plaintiff's proposal if it was the lowest in price and that a minority of board members would make a similar recommendation. The court feels that the question of the reasonableness of plaintiff's reliance is a question of fact which should not be disposed of without evaluation of all the evidence. For example, at oral argument it was revealed that Gannett, Fleming, Corddry & Carpenter never submitted a bid on the engineering work but that this firm was retained to do the work notwithstanding. Accordingly, for purposes of the demurrer, the court holds that plaintiff has pleaded sufficient facts to state a cause of action for deceit.

Defendants have further asserted that even if the elements of an action for deceit are present, the individual defendants are immune from tort liability under the doctrine of official immunity. Immunity from suit is an affirmative defense which should be pleaded under the heading of "New Matter" in a

responsive pleading: Pa.R.C.P. 1030. It is not properly raised by preliminary objection. See Freach v. Com., 471 Pa. 558, 564, 370 A. 2d 1163, 1166, n. 6 (1977). Accordingly, the court will not decide the question of whether the individual board members are immune from suit at this time. However, because the issue of the applicability of the doctrine of official immunity has been briefed and argued by the parties, the court will attempt to resolve some of the questions raised at argument to assist the parties in properly framing the issue since it will most likely arise again in this litigation.

Plaintiff argues that individual defendants are personally liable as corporate officers to a defrauded party, relying upon a series of cases on the personal liability of corporate officers in an action in trespass for deceit. See, e.g., Jamestown Iron & Metal Co. v. Knofsky, 291 Pa. 60, 139 Atl. 611 (1927). However, the cases cited by plaintiff merely remove the shield of the corporate structure from an officer who intentionally commits the tort of fraudulent misrepresentation. The cases do not address the doctrine of immunity for government officials which is an entirely separate question.

It is clear that under the decision of our Supreme Court in Ayala v. Philadelphia Board of Public Education, 453 Pa. 584, 305 A. 2d 877 (1973), the Mount Joy Borough Authority itself has no immunity to the instant suit. In Ayala, the Supreme Court abolished the doctrine of governmental immunity as it applies to local governmental units. However, that decision did not address the question of the tort liability of individual public officials. Although the doctrine of official immunity is clearly an outgrowth of the doctrine of governmental immunity, this court does not feel that it can assume that our

Supreme Court intended in abrogating the defense of governmental immunity to sweep away all forms of immunity against governmental officials and governmental bodies.[1] As recently as 1975 the Superior Court has reaffirmed the vitality of the doctrine of absolute immunity for high government officials and conditional immunity for lesser governmental officials. See Lehnig v. Felton, 235 Pa. Superior Ct. 100, 340 A. 2d 564 (1975).

In determining to what extent a public official is cloaked with immunity the court must first determine whether the individual asserting the immunity is a high public official entitled to absolute immunity or a low public official entitled to conditional immunity. Although the test is not always an easy one to apply, whether or not a public officer is a high public official depends upon "the nature of his duties, the importance of his office, and particularly whether or not he has policy-making functions." Montgomery v. Philadelphia, 392 Pa. 178, 186, 140 A. 2d 100, 105 (1958); Dubree, Jr., Executor v. Com., 8 Pa. Commonwealth Ct. 567, 571, 303 A. 2d 530, 532 (1973). The court must also consider the purpose of the immunity and determine whether that purpose is accomplished by granting immunity in the case at bar. As the Superior Court has stated, the purpose " . . . is . . . to prevent an excess of caution, based upon considerations of personal liability or subjection to suit, from influencing a decision requiring the exercise

1. See Northumberland Co. v. West End Nat'l. Bank of Shamokin, 74 D. & C. 2d 85 (1975). The Supreme Court in Ayala specifically declined to abolish the sovereign immunity of the Commonwealth itself stating that that question was not before it: 453 Pa. at 587, n. 2.

of judgment." Ammlung v. Platt, 224 Pa. Superior Ct. 47, 52, 302 A. 2d 491, 494 (1973).

This case is an excellent example of why the question of immunity from suit should not be disposed of on preliminary objections. The question of whether the individual defendants are high public officials or low public officials may well be dispositive of the question of whether they have immunity to this suit.[2] There is nothing in the record at this time to show what are the duties and functions of the individual members of the Mount Joy Borough Authority Board. In the event that this issue is properly raised through a responsive pleading, the parties shall develop a record, utilizing depositions, interrogatories, affidavits, or any other discovery tools which are available, to enable the court to properly evaluate the status of the individual board members as either high public officials or low public officials. At the very least, the articles of incorporation of the Mount Joy Borough Authority, as amended, should be submitted to the court at that time. Any additional evidence concerning the individual board members which relates to the nature of their duties, the importance of their office, and

2. In the instant case, plaintiff has alleged that the individual defendants, through their agent Joseph S. Bateman, made certain oral representations and written statements to plaintiff which were known by defendants to be false and which were made by defendants with the intent to deceive and defraud plaintiff and to induce it to prepare and submit its proposal. See complaint, paragraphs (10) and (11). These allegations rise above the level of mere negligence to intentional malicious conduct. While the issue is not before the court at this time, it may well be that conditional immunity will not shield defendants from the conduct alleged here. See Bogucki v. Eells, 67 D. & C. 2d 275 (1974).

whether or not they have policy-making functions, should be presented to the court at such time as a ruling on the question of immunity of the individual board members is properly before it.

## COUNT I—MOTION TO STRIKE

Defendants have moved to strike that portion of Count I which seeks to recover attorneys' fees as part of the damages in this case. It is clearly the rule in this Commonwealth that attorneys' fees are not recoverable from the adverse party to a cause in the absence of express statutory allowance of the same, a clear agreement by the parties, or some other established exception: Corace v. Balint, 418 Pa. 262, 271, 210 A. 2d 882, 887 (1965). Plaintiff has failed to establish any exception to the general rule here. Section 914 of the Restatement, 2d, Torts, is of no avail to plaintiff here. Section 914 provides: "One who through the tort of another has been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover reasonable compensation for loss of time, attorney fees and other expenditures thereby suffered or incurred in the earlier action."

The comment and illustrations to this section of the Restatement demonstrate that it is not the legal fees in the very action against the tortfeasor that are recoverable but only fees incurred in separate actions by or against third persons, when the separate actions were caused by the tortfeasor. Comment (b) to section 914 provides: "The rule stated in this Subsection applies when the *preceding* action was brought against the present plaintiff either by a third person or by the state, and also when the *present* plaintiff has been led by the defendant's

tort to take legal proceedings against a third person.
. . ." (Emphasis supplied.) See also Corace v. Balint, supra, at page 274, n. 7. The situation in the case of Savitz v. Weinstein, 395 Pa. 173, 149 A. 2d 110 (1959), falls within this comment to the Restatement. In Savitz the court in a footnote stated that plaintiff Savitz could recover against his former attorney the expenses of a previous suit including attorneys' fees, where the previous suit had been made necessary as a result of tortious misrepresentation by his former attorney, who was defendant Weinstein. However, the Savitz court clearly did not approve the awarding of attorneys' fees to Savitz in this suit against attorney Weinstein. Plaintiff's prayer for reasonable attorneys' fees will be stricken from the complaint.

## COUNT II—DEMURRER

In Count II of the complaint, plaintiff seeks to predicate liability of defendants on the alleged violation of a legislative enactment by defendants, relying upon the Restatement, Torts, §286, and Ennis, Admrx. v. Atkin, 354 Pa. 165, 47 A. 2d 217 (1946), which cited the Restatement as valid law in Pennsylvania. Section 286 provides as follows:

"§286. VIOLATIONS CREATING CIVIL LIABILITY.
"The violation of a legislative enactment by doing a prohibited act, or by failing to do a required act, makes the actor liable for an invasion of an interest of another if: (a) the intent of the enactment is exclusively or in part to protect an interest of the other as an individual; and (b) the interest invaded is one which the enactment is intended to protect; and (c) where the enactment is intended to protect

an interest from a particular hazard, the invasion of the interests results from that hazard; and (d) the violation is a legal cause of the invasion, and the other has not so conducted himself as to disable himself from maintaining an action."

Plaintiff has asserted that defendants have violated certain regulations of the United States Environmental Protection Agency (EPA) codified at 40 C.F.R. §35.937 through 35.937.11. These regulations comprehensively regulate the entire contract-letting process for agreements for architectural or engineering services when the aggregate amount of services involved is expected to exceed $10,000. Plaintiff has alleged that the aggregate amount at issue in this case is in excess of $10,000. Plaintiff has also alleged that these regulations apply to the contracting done by the Mount Joy Borough Authority by virtue of the fact that 75 percent of the cost of the proposed sewage treatment facility would be covered by a grant from EPA. Assuming for purposes of a demurrer that these regulations do apply to the transaction at issue in this case, the court will nevertheless sustain the demurrer.

It is not necessary for the court to carefully analyze each of the six pages in the Code of Federal Regulations to determine whether violations have been alleged, as plaintiff would apparently have us do. Instead, we note that one of the requirements of the Restatement, Torts, §286, which is here relied upon by plaintiff, is that the interest invaded is one which the enactment is intended to protect. The court finds upon review of the regulations and the statute under which they were promulgated that the regulations were designed to protect the taxpayers and the general public who would be using

the sewage treatment plant and not a frustrated low bidder for engineering services.

40 C.F.R. §35.937(b) states the policy of the regulations to be: " . . . to encourage public announcement of the requirements for personal and professional services, including engineering services. . . . All negotiated procurement shall be conducted in a manner to provide to the maximum practicable extent open and free competition. *Nothing in this subpart shall be construed as requiring competitive bids or price competition in the procurement of architectural or engineering services.*" (Emphasis supplied.)

This statement of policy is further emphasized in the introduction to section 35.937 series signed by the Administrator of the United States Environmental Protection Agency and published in 40 Fed. Reg. 58602 (1975): " . . . [I]t is not the intent of the Agency or of the regulations to require grantees to solicit 'bids' for engineering services, nor to require grantees to compare the cost proposals of competing firms with which it is negotiating. The basis of final selection would remain the grantee's choice. The regulations emphasize the negotiation process necessary to insure the best technical product at a fair and reasonable price. . . ." It is clear from the above that these regulations were not intended to protect the interest which plaintiff is trying to assert here, namely the right of a low bidder to receive the contract for engineering services. Accordingly defendant's demurrer to the allegations of violations of EPA regulations is sustained.

## COUNT II—MOTION TO STRIKE

Defendants have moved to strike portions of plaintiff's complaint alleging violations of the Open

Meeting Law of July 19, 1974, P.L. 486, 65 P.S. §261 et seq., as impertinent. Defendants correctly assert in their brief that the test as to impertinent matter is that of relevancy to the issue before the court. See Schiavo v. Caplo (No. 2), 6 D. & C. 2d 556, 559 (1955). Plaintiff asserts that the alleged violations of the Open Meeting Law are relevant to its attempts to establish civil liability against defendants under the Restatement, Torts, §286. Plaintiff is alleging that defendants have breached a legislatively created duty to award the contract at a public meeting. Even assuming that plaintiff can prove these facts, there is no allegation in the complaint as it now stands that this alleged violation of the Open Meeting Law was a legal cause of the damages which plaintiff claims in Count II. Absent an allegation of legal causation, plaintiff's averment that defendants have violated the Open Meeting Law is clearly impertinent. See Restatement, Torts, § 286. Accordingly, this portion of Count II of the complaint will be stricken.

Finally, for the reasons stated previously, plaintiff's prayer for reasonable attorney's fees is stricken from Count II of the complaint.

## ORDER

And now, March 2, 1978, for the reasons set forth in the opinion, defendants' preliminary objections are sustained in part and dismissed in part. Defendants' demurrer to Count I of the complaint is dismissed. Plaintiff's demands for recovery of attorneys' fees in Count I and Count II of the complaint are hereby stricken. Plaintiff's allegations in Count II of the complaint that defendants have violated provisions of the Open Meeting Law are stricken. Finally, defendants' demurrer to Count II

of the complaint is granted, and Count II is dismissed with prejudice insofar as it alleges violations of certain regulations of the United States Environmental Protection Agency as a basis for recovery.

At such time as the case is at issue in view of the demand in Count I which is less than $5,000, this case shall be referred to a Board of Arbitrators under Rule 300 of the Court of Common Pleas of Lancaster County—Civil.

---

Editor's note: On the matter of official immunity, see now Mayle v. Pennsylvania Department of Highways, 479 Pa. 384, 388 A. 2d 709 (1978), and Act of September 28, 1978, P.L. _____ (No. 152).